## THE STATE v. FROELICK.

1. **Homicide**: SELF-DEFENSE: QUESTION FOR JURY. Where defendant and the decedent, with their companions, had been drinking whiskey together at the house where defendant boarded, and after defendant had retired to bed the decedent and others invaded his bed room and engaged in a fight wherein an assault was made upon defendant, and wherein the fatal blow was struck by defendant, *held* that it was a question for the jury whether or not the homicide was justifiable on the ground of self-defense.

2. ———: INSTRUCTIONS AS TO MINOR OFFENSES. Where death results immediately from an assault, and the assailant is charged with murder, he is either responsible for the homicide, or is entitled to be acquitted; and in such case it would be improper to instruct the jury on any crime less than the degrees of criminal homicide. (*State v. Parker*, 66 Iowa, 586, distinguished, and *State v. Cole*, 63 Id., 695, followed in principle.)

3. **Evidence**: MORAL CHARACTER AS TEST OF CREDIBILITY. The general moral character of a witness—that is, his reputation for morality in the vicinity of his residence, may be shown as a test of his credibility; (Code, § 3649;) and it was error to exclude an inquiry of that kind in this case.

*Appeal from Linn District Court.*

THURSDAY, DECEMBER 9.

THE defendant was indicted for the murder of one Mundbrood. He was convicted of the crime of manslaughter, and he appeals.

*Thompson & Lanning*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

ROTHROCK, J.—I. It appears from the evidence in the case that the defendant and his brother, Max Froelick, boarded
1. HOMICIDE: self-defense: question for jury. and lodged at the home of one Chick, in the city of Cedar Rapids. They were at said house at about half past eight o'clock in the evening, at which time Mundbrood, one Hinkleman and another party came there. These parties, with Chick and his wife, all being

present, two of them went out, and returned with a jug of whiskey, of which they all drank. Afterwards Mundbrood and Hinkleman went out of the house. They were gone but a short time, when they returned, at which time the defendant and his brother had retired to their bed-room. Mundbrood and Hinkleman went into the house, and into the room occupied by the Froelick brothers. There was no light in the room. The defendant's brother was lying on the bed and was very drunk. The parties in the room engaged in a fight, and in a few minutes Mundbrood was stabbed in the back of the neck, and died from the wound a very short time thereafter. The evidence shows quite conclusively that the defendant inflicted the wound, and that it was done with a sharp instrument. Hinkleman testified upon the trial that the wound was inflicted with a knife. The defendant testified that he did not strike the defendant with a knife, but with a file.

Counsel for appellant contend that the verdict is not supported by the evidence. They do not claim that the wound was inflicted by any person other than the defendant. They claim that the defendant ought to have been acquitted because he was acting in self-defense. This was a question for the jury to determine, and, in view of all the evidence, which we need not here repeat, we think we ought not to disturb the verdict on this ground. It is true that the evidence shows that the deceased and Hinkleman, his companion, went into defendant's private room, and, Chick and Mundbrood following, commenced the fight by a brutal assault upon the defendant and his brother. But it was a fair question for the jury to determine whether the defendant should be excused for the homicide.

II. The court instructed the jury that the defendant might be found guilty of murder in the first degree, murder in the second degree, or manslaughter. It is

2. ——: instructions as to minor offenses.

insisted by counsel for appellant that the court should have instructed the jury that it was com-

petent to find the defendant guilty of an assault with intent to commit a great bodily injury, or assault and battery, or a simple assault, because each one of these crimes is necessarily included in the crime charged in the indictment. We are cited to the case of *State v. Parker*, 66 Iowa, 586. That was an indictment for the murder of a child by assaulting it, and by failure and refusal of the defendant to furnish the child with medical treatment and care, and compelling the child to work while wounded and bruised. It is held in that case that the defendant was properly convicted of an assault with intent to commit a great bodily injury, under section 4406 of the Code, because the crime charged necessarily included an assault. But the rule in that case was based upon the thought that the jury might have found that death resulted, not from the assaults and treatment received from the defendant, but from disease. No such state of facts is to be found in this case. The evidence is indisputable that Mundbrood died from a wound inflicted by the defendant. It was not necessary, therefore, that the court should instruct upon any crime less than the degrees of criminal homicide, because such an instruction would have been improper, under the evidence in the case. As death resulted from the assault, the defendant was responsible for the homicide, or was entitled to an acquittal. This is, in principle, the rule of the case of *State v. Cole*, 63 Iowa, 695.

III. William Hinkleman was present at the time of the homicide, and he was one of the principal witnesses against the defendant. He is the only witness who testified that the defendant stabbed Mundbrood with a knife. If he and his companion, Mundbrood, had not returned to the house, and, in company with Chick, invaded the sleeping room of the defendant and his brother, and commenced a fight, the homicide would not have occurred. Hinkleman was so much interested in the case that he hired counsel to assist the district attorney in the prosecution. The defendant called one Reed as a witness. He testified that

3. EVIDENCE: moral character as test of credibility.

Hinkleman was in his employ, and he was acquainted with him. The witness was then asked this question: "Are you acquainted with the general moral character of this man Hinkleman, in the vicinity in which he resides, there in Cedar Rapids?" The state objected to the question as being incompetent and immaterial, and the objection was sustained. Defendant's counsel claim that this ruling of the court was erroneous, and we think the position of counsel must be sustained. It is provided by section 3649 of the Code that "the general moral character of a witness may be proved, for the purpose of testing his credibility." This is precisely what the defendant sought to do by the above question. The attorney-general claims that the objection to the question was properly sustained, and cites *State v. Egan*, 59 Iowa, 636. That case determines that character as known to the witness, independent of reputation, is not competent evidence, but that character which is named in the statute means the same as reputation. That is precisely what the question objected to contemplated. It was the general moral character of the witness in the vicinity of his residence, and not what the witness knew of him personally, as distinguished from his character or reputation in the vicinity, that the inquiry was directed to.

We think, in view of all the facts in this case, that the defendant may have been very seriously prejudiced by this ruling, as bearing upon the question as to whether he should have been acquitted upon the ground of self-defense, and the judgment will be reversed, and the cause remanded.

REVERSED.