[No. 7643.]

KING V. THE PEOPLE.

1. CRIMINAL LAW—*Instructions—Construed—Indictment for Murder*—An instruction declared that "deliberately" does not mean brooded over, or reflected upon, for a week, day or hour, "but an intent to kill executed by *the* defendant" in cold blood. The use of the definite article in referring to the accused was held not to be taken as the court's expression of a belief in his guilt.

2. ———*To Be Taken as a Whole*—What is omitted from one part of the charge may be effectually supplied by what is said elsewhere therein. The jury were told by one instruction that to warrant a verdict of guilty they must find that the killing was with premeditation. The failure to impose upon the prosecution the burden of establishing the defendant's guilt, by the evidence, beyond reasonable doubt, was *held* immaterial where this was prescribed elsewhere in the charge.

One instruction told the jury that if they should find from the evidence beyond reasonable doubt that another person than the accused committed the homicide, and from the evidence, beyond reasonable doubt, that the prisoner unlawfully, feloniously, premeditatedly, etc., abetted or assisted, etc., he also was guilty of murder in the first degree. By another instruction the two degrees of murder as defined in the statute were fully explained. *Held*, that the effect of the instruction first quoted was not to take away from the jury the degree of the homicide.

By one instruction the jury were told that if they should find from the evidence beyond reasonable doubt that the prisoner and one Fields, at a time and place named, wilfully, etc., engaged in an attempt to rob the deceased, and in this attempt Fields inflicted upon the deceased a mortal wound, and at the time, etc., the prisoner "was present, unlawfully, feloniously, etc., aiding, abetting, assisting, etc.," the prisoner was guilty of murder in the first degree. *Held*, that this instruction in no manner invaded the province of the jury.

By another instruction the jury were told that if Fields committed the homicide without premeditation, and that the prisoner aided therein, the prisoner was guilty of murder in the second degree, provided they should further find, etc., that the homicide was not com-

mitted in an attempt to rob. *Held*, that thereby the jury were in ef-
fect instructed that though the homicide was without premeditation,
it was murder in the first degree unless they should further, affirm-
atively, find that it was not committed in an attempt to rob. Where-
as, if there was no premeditation, and the jury made no finding upon
the question whether it was committed in an attempted robbery, the
prisoner could be convicted only of murder in the second degree. And
the evidence not being preserved in the record, it was not to be pre-
sumed that it supported only the charge of murder committed in the
perpetration or attempted perpetration of a robbery, where the court
had charged, not only upon that theory, but upon the theory of an
actual preconceived design to take the life of the deceased, and upon
the theory of murder in the second degree. The conviction was
therefore reversed.

3. BILL OF EXCEPTIONS—*Not Required of Defeated Party*—No law
makes it incumbent upon the defeated party, to bring the evidence
into the record.

*Error to Elbert District Court.*—Hon. J. W. SHEAFOR,
Judge.

Mr. H. A. HICKS and Mr. CHARLES ROACH, for plaintiff
in error.

Hon. BENJAMIN GRIFFITH, attorney general, and Mr.
CHARLES O'CONNOR, first assistant attorney general, for the
people.

Mr. JUSTICE WHITE delivered the opinion of the court:

George King was tried for, and convicted of the murder
of Felix Jackson, commonly known as Pete Jackson, and,
upon the verdict of the jury, sentenced to death. He brings
the case here for review.

In instructing the jury as to the meaning of the word
"deliberately" the court stated, *inter alia,* that it does not mean
"brooded over or reflected upon for a week, or a day, or
an hour, but it means an intent to kill, executed by the defend-
ant in a cool state of the blood," *et cetera,* and plaintiff in error
claims that by the use of the adjective "the" instead of "a" be-
fore the word "defendant," the court thereby expressed an

opinion that the "defendant on trial had in a cool state of the blood committed the crime charged."

We are not impressed with the criticism or the inference sought to be drawn from the language used. The clear meaning of the instruction is, that deliberation, as an element of the crime, did not exist, unless the jury found that the defendant, in the absence of overpowering passion, distinctly formed in his mind the intent to kill the deceased, and thereafter, however short the time, so executed the act of killing.

Instruction No. 8 told the jury that in order to warrant them in finding a verdict of murder in the first degree, "you must find, and so indicate in your verdict, that the killing was with deliberation and premeditation," and it is claimed that because they were not also told therein that such finding must be upon the evidence and beyond all reasonable doubt, it constitutes reversible error. The burden of proof to establish the guilt of defendant from the evidence beyond a reasonable doubt, was placed upon the people by Instruction No. 5, which also declared that the defendant must be presumed to be innocent of the crime charged against him until proven guilty by the evidence beyond a reasonable doubt. Moreover, the necessity of finding the truth of the charge from the evidence beyond all reasonable doubt was covered by several other instructions, and it is clear that no possible misconception in that respect could have entered the minds of the jurymen. It is not a case where there was given an incorrect and a correct instruction covering the same matter, but rather one wherein that which is said to be an omission from one instruction was supplemented and cured by the language of another forming a portion of the same charge.

Instruction No. 9 told the jury that if they believed and found from the evidence beyond a reasonable doubt that one "John Fields * * * wilfully, unlawfully, feloniously, deliberately, premeditatedly and with malice aforethought," killed and murdered the deceased, and "if you should further find and believe from the evidence beyond a reasonable doubt

that the said defendant, George King, was present at the time and place aforesaid, and did then and there "unlawfully, wilfully, feloniously, deliberately, premeditatedly and of his malice aforethought, abet or assist" in such killing, "then you are instructed that the defendant, George King, is also guilty of murder of the first degree, and you should so find and state in your verdict." It is claimed that the instruction constitutes reversible error, because the question of the degree of murder is thereby taken from the jury. We do not believe that the instruction has the effect claimed. The statute declares murder to be the unlawful killing of a human being with malice aforethought, either express or implied, by any of the various means by which death may be occasioned. Sec. 1622, R. S., 1908. And section 1624, R. S., 1908, declares, *inter alia,* that murder which shall be perpetrated "by any kind of willful, deliberate and premeditated killing," or "which is committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder of the first degree." By Instruction No. 3 the two degrees of murder, as defined in the statute, were fully explained. So the substantial effect of Instruction No. 9 was to say to the jury that if they found from the evidence beyond a reasonable doubt that John Fields was guilty of murder in the first degree, and that the defendant was an accessory thereto during the fact, deliberately and premeditatedly assisting therein, he was likewise guilty of murder in the first degree, and they should so find by their verdict.

A like objection and criticism is made and urged against Instruction No. 10. It told the jury that if they found and believed from the evidence beyond a reasonable doubt that defendant and Fields, at a time and place named, did wilfully and feloniously engage in an attempt to take from the person of Jackson, by violence and force, or by violence and intimidation, his money, goods or other valuable things, and while so engaged Fields did unlawfully and feloniously shoot and kill Jackson, and at the time the shot was fired by Fields and the mortal wound inflicted upon Jackson, the defendant,

George King, was present, unlawfully and feloniously aiding, abetting or assisting Fields in the attempt to take from Jackson his money, *et cetera,* then the defendant, King, would be guilty of murder in the first degree, and the jury should so find and state in their verdict.

While it is true that when the crime of murder is established the law declares it to be murder of the second, in the absence of circumstances showing it to have been murder of the first degree, nevertheless when the facts and circumstances in evidence are detailed in an instruction and embody only the elements of murder in the first degree as declared by the statute, it is not improper to state in an instruction that if the jury finds the existence of such facts beyond a reasonable doubt the defendant would be guilty of murder in the first degree, and the jury should so find. The statute makes a homicide committed in the perpetration or attempted perpetration of robbery, murder in the first degree, and the substantial effect of the instruction was to impose the duty upon the jury to ascertain whether the robbery had been committed or attempted, and, if so, whether the homicide had been committed in the perpetration thereof. If both were found in the affirmative, beyond a reasonable doubt, the statute fixes the homicide as murder of the first degree, and under such circumstances that degree is the only grade of the offense of murder the evidence will support. The rule as stated in 21 Cyc. 1067, is that, "where the absence of an actual preconceived design to take life does not reduce the grade of the offense, where the homicide was committed in the perpetration of certain other felonies, such as arson, burglary, rape, or robbery, the court need not, in such cases, instruct the jury as to minor included offenses." Under such circumstances there is but one grade of the offense, that is, murder in the first degree.

By Instruction No. 12, the jury were told, substantially, that if they found beyond a reasonable doubt that John Fields wilfully, unlawfully, feloniously and with malice aforethought, killed the deceased, and they did not find that such

killing was with deliberation and premeditation, and they fur-ther found beyond a reasonable doubt that the defendant, King, so aided and assisted Fields in such killing, "then you are instructed that the defendant, George King, is guilty of murder of the second degree, and you should so find and state in your verdict; provided you further find from the evidence that at the time of the killing of the said Felix Jackson, commonly known as Pete Jackson, the said defendant and the said John Fields were not engaged in an attempt to rob the said Felix Jackson, commonly known as Pete Jackson, as defined in Instruction No. 10."

We think the instruction vicious. Its effect was to tell the jury that although the killing of deceased may have been without any deliberation or premeditation whatever, it was, nevertheless, murder in the first degree, unless they further found affirmatively that the homicide was not committed in the execution or attempted execution of robbery. Such is not the law. If the jury believed and found that the killing was without deliberation and premeditation, but attended with all the other elements of murder, the defendant was entitled to a verdict of murder in the second degree, though the jury entertained a reasonable doubt, and made no finding as to whether the homicide was or was not perpetrated in an attempt to rob. The principle applicable here is considered, and applied in *Pribble v. People,* 49 Colo. 210. If the case had been submitted solely upon the theory that the murder was committed in the perpetration or attempted perpetration of robbery, or if the evidence had been embodied in a bill of exceptions and made a part of the record, and we could clearly discover therefrom that the homicide had been so committed, it might be held that the instruction was without prejudice.— *Wickham v. People,* 41 Colo. 345. Under the first instance we might presume that all the issues made were presented by the instructions, and inasmuch as homicide committed in the perpetration or attempted perpetration of robbery is murder of the first degree, the defendant had suffered no injury; and

under the second we might know that the defendant was in no wise prejudiced. But this record presents no such facts and conditions. Two theories of murder of the first degree were covered by the instructions. One that there was an actual preconceived design to take the life of the deceased; the other that there was no actual design to kill, but that the homicide was committed in the perpetration of a designated felony. An instruction also covered the theory of murder in the second degree, the jury being told that if they did not find the defendant guilty of murder of the first degree, as explained in the charge, it would be their duty to determine whether he was guilty of murder of the second degree as elsewhere defined in the instructions, and that they could find him guilty of either degree of murder, or not guilty as the evidence warranted. As the evidence was not brought into the record by a bill of exceptions, we must presume that it called for the instructions given. We can not presume that it supported only the theory of murder in the first degree committed in the perpetration, or attempted perpetration of robbery, when the court not only instructed upon that theory, but upon the theory of an actual preconceived design to take the life of the party killed, and also upon the theory of murder in the second degree. On the contrary, the controlling presumption must be that the instructions given presented only the issues involved.—*Garver v. Garver,* 52 Colo. 227; 121 Pac. 165. The instruction can not be applied, as a correct proposition of law, to any conceivable state of facts consistent with the record, and is governed by the rule stated in *Garver v. Garver, supra,* where, on page 167, we said: "While it is true, as claimed by defendant in error, if the evidence be not preserved by bill of exceptions, an instruction, erroneous as an abstract proposition of law, but which, as applied to a particular state of facts, may be correct, will not necessarily require the reversal of a case; nevertheless a contrary rule exists, and must be applied where the instruction is clearly erroneous and could not be applied as a correct proposition of law to any conceivable state of facts."

In *Murray v. Johnson*, 45 Iowa 57, 58, the rule is recognized and applied in the following language: "The errors assigned relate solely to the instructions given and refused, and it is objected by the appellee that no part of the evidence is properly before us, and that, therefore, we cannot pass upon the pertinency of the instructions or determine they are erroneous. This does not necessarily follow, for if under no possible view that can be taken do the instructions embody correct propositions of law when applied to the issues presented by the pleadings, and if, on the contrary, they are clearly erroneous, then we not only have the power but it is our duty to pass upon and determine the questions presented."

And in *Downing v. State*, 10 Wyo. 373, 377, after stating that it has been repeatedly held that when the evidence is not in the record, a cause will not be reversed for giving to the jury an instruction which would be correct under any evidence that could have been admitted under the issues in the cause, the court says: "It is held, however, that if the instructions are in themselves radically wrong under any state of facts that could have been proven under the issues in the cause, and direct the minds of jury to an improper basis on which to place their verdict, the cause will be reversed, though the evidence is not in the record."

Every presumption in favor of the correctness of a ruling of the trial court is indulged by this court, and unless the record affirmatively discloses an error of which complaint is made, based upon the entire record, the judgment will be affirmed. But here the record affirmatively discloses prejudicial error under the issues in the cause as made by the pleadings and submitted to the jury. This is essentially true, because the evidence is no part of the record until made such by bill of exceptions, and no law makes it incumbent upon the losing party to bring the evidence into the record. So upon the whole record it appears affirmatively that prejudicial error was committed, and the substantial rights of the defendant disre-

garded. The judgment is, therefore, reversed, and the cause remanded for a new trial.

*Judgment Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE MUSSER specially concurs.

Mr. JUSTICE GABBERT and Mr. JUSTICE GARRIGUES dissent.

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE MUSSER specially concurring:

I concur in the result reached by Mr. Justice White and in his opinion, except in so far as the views I herein express may conflict with or modify it.

It appears from the record in this case that at the trial an official stenographer was present and took down the testimony in shorthand, and that afterwards his shorthand notes were unintentionally destroyed. Apparently these notes were unwittingly picked up by some member of the stenographer's family at his home and with other papers, supposed to be of no value, thrown into a fire. Anyway the stenographer could not find them, and, therefore, could not furnish the testimony as is usual in such cases. Neither the defendant nor anyone for him had anything to do with the loss or destruction of these notes. Section 1472, Rev. Stats., provides that the judge of each judicial district may appoint a shorthand reporter to attend during any term of court and on the direction of the court take down in shorthand the testimony and other matters occurring at the trial. This section was in the General Laws of 1877, the General Statutes of 1883 and all statutes since. For years it has been the invariable custom for district judges to appoint stenographers for their respective districts to appear at every criminal trial, and under the court's direction, take down the testimony and other matters, and when a defendant wanted a bill of exceptions, containing all of the testimony in

a case, if desired, it has been the custom invariably to obtain it from the stenographer. In accordance with that custom, and by virtue of the statute, a stenographer was present and was directed to take down the testimony in this particular case, and he did take it down. The defendant had the right, under such circumstances to assume that he would obtain the testimony from this stenographer for his bill of exceptions. He was not called upon to make any other arrangements than were, in virtue of the statute, provided by the direction of the court trying him, nor to anticipate that he would be called upon to procure that testimony from any other source, nor compelled to depend upon the uncertain memory of those present as to what the testimony was. In this condition of affairs, without any fault of his own, he was deprived of this statutory and usual, and in this case particular, source for obtaining the testimony for his bill of exceptions, solely on account of the fault of an official of the court, who did not properly care for his notes. It is for this reason that the testimony does not appear in the bill of exceptions. Of course he might have collected together some persons who were present at the trial, who might have detailed to him their version of what the testimony was, and the judge of the court, upon his own memory and the memory of these persons, may have put into the bill of exceptions something which they thought was the testimony.

It cannot be the law of this state that the defendant, under sentence of death, must suffer for the fault of the court stenographer, whose duty it was to preserve his notes, nor that the defendant, by reason of such official neglect, was compelled to resort to an uncertain and antiquated method of obtaining the testimony for his bill of exceptions, which has long ago been discarded in the practice in this state. If the defendant or his attorney were to blame for the loss of the notes, or if the stenographer had the notes and the defendant had failed or neglected to have them extended and put into the bill of exceptions, that is if the absence of the testimony from the

bill of exceptions was caused by any fault, neglect or wrong of the defendant, an entirely different question would be presented. Here, the absence of the testimony is the fault of the official of the court, and not of the defendant. Unde. such circumstances, it is the law, in my judgment, that the instructions can be reviewed, notwithstanding the absence of the testimony. To say that they can not be is to take away from defendant the right of review, on account of the fault of the other party to the litigation. It was the officer of the court who was to blame for the condition of the record. Through no fault of his, but by reason of the officer's fault, it was impossible for the defendant to obtain the testimony and put it into his bill of exceptions, in accordance with the recognized practice in this state. He was entitled to pursue that practice, and was not required to resort to some discarded one. To say that he is cut off from his right to have the instructions reviewed, on account of the absence of the testimony, is to say that the prosecution, *The People,* shall profit by the fault of their official and that the defendant shall bear the burden of their fault. In the cases wherein this court has said that instructions can not be reviewed in the absence of the testimony no such circumstances existed as are here presented to account for such absence, and they are, therefore, not applicable. Let him who is at fault bear the resulting burden.

Therefore, forasmuch as the absence of the testimony was occasioned by the neglect of the court official, which neglect rendered the recognized and established practice impossible, it should be conclusively presumed as against the people that there was evidence that would warrant the jury in returning a verdict of murder in the second degree, because the court instructed in that degree. This being so, the defendant was entitled to a correct instruction. As Instruction No. 12 was erroneous, for the reasons stated by Mr. Justice White, the error could not be otherwise than prejudicial in the state of the testimony.

Mr. JUSTICE GABBERT dissenting:

The province of this court is to redress real grievances, and not to decide moot questions. For this reason, it is a rule of universal application, that a judgment will not be reversed on account of an erroneous instruction, unless it appears probable that the jury were misled to the prejudice of the party appealing. It is not sufficient to show that error, in the abstract, was committed in giving an instruction. It must affirmatively appear that it was prejudicial. This can only be determined by a consideration of the evidence. In other words, a party bringing a case here for review cannot base reversible error on only part of the record or proceedings which led up to his conviction. It is said in the opinion that if the evidence were preserved by a bill of exceptions, it might appear that this instruction was not prejudicial. This announcement recognizes that a consideration of the testimony might disclose that an erroneous instruction was not prejudicial, but notwithstanding this conclusion, the opinion is based upon the erroneous theory, that it may be considered in the absence of the testimony, although whether or not it prejudiced the rights of the party bringing the case here for review can only be ascertained by a consideration of everything presented to the trial court. But the conclusion announced in the majority opinion, that an instruction may be considered without the testimony, permits reversible error to be predicated upon a part of the record and proceedings, instead of the whole, and hereafter we shall find that a party convicted of a crime will find it not only convenient, but to his advantage, when an instruction given does not correctly state the law, to bring up the instructions without the testimony, for, with the latter, it might conclusively appear that the error predicated upon the instruction did not prejudice his rights. It is hardly necessary to refer to the many cases where we have held, in both civil and criminal actions, that in the absence of the testimony, the instructions will not be

reviewed. It is sought to take the case out of this general rule by stating, in effect, that Instruction No. 12 cannot be applied as a correct proposition of law to any conceivable state of facts consistent with the record. Applying this rule, the opinion, in my judgment, is not logical. True, the court instructed on murder in the first and second degrees, but it by no means follows that, in the absence of the testimony, we can say or assume there was testimony, when considering an instruction alone, to establish the fact that the life of Jackson was taken, except in the attempt to rob him.

But, waiving these matters, I cannot agree that Instruction No. 12 is erroneous, for the reason stated in the majority opinion, to the effect that the burden of proving that the homicide was not committed in an attempt to rob, was placed upon the defendant. Instruction No. 10 clearly advised the jury that murder committed in an attempt to rob constituted murder in the first degree. By Instruction No. 12 they were told what constituted murder in the second degree; and if they found the state of facts therein enumerated was established by the evidence beyond a reasonable doubt, then the defendant was only guilty of murder in the second degree, but that the killing of Jackson would not reduce it to that degree if it appeared from the testimony, beyond a reasonable doubt, that Jackson's life was taken in an attempt to rob him. Instructions must be considered as a whole, and when instructions 10 and 12 are read together, it appears to me that this was clearly the effect of the two instructions, and that under no circumstances could the jury have been misled or have understood that any burden was placed upon the defendant, whatever, to show a state of facts which would reduce the homicide to murder of the second degree.

Nor do the views expressed by Mr. Justice Musser change the situation. I have always understood the rule to be that a court of review never acted upon what was not, or could not, be brought before it. With all due deference to my learned associates, I respectfully submit that if the decision of the ma-

jority is followed in the future, it will inevitably result in the reversal of convictions which would, and should, without question, have been sustained had it been declared, as it should be, that in the absence of the testimony, instructions will not be reviewed.

Now, what does the statement in the opinion of Mr. Justice White, to the effect that if the evidence were here, it might appear that the instruction upon which the reversal is based, mean, except to say that if one convicted of a crime only brings up the instructions for consideration, his case may be reversed, whereas, if he brought the testimony before the court by a bill of exceptions, it might not be. This is equivalent to saying, and in fact, does say, that a case may be reversed upon part of the proceedings before the trial court, when the proper rule is, that all matters before the trial court which in any manner bear upon the question presented for review must be considered before an alleged error will be declared prejudicial. That this must be the true rule is manifest from the expression just mentioned, for the very obvious reason that if the evidence were here, it might appear the instruction, although erroneous as a legal proposition, was not prejudicial. In other words, this expression of itself recognizes that, with the testimony before us, the judgment of the trial court might be affirmed, thus, in effect, saying that from all the proceedings it might appear that the error complained of was nonprejudicial. Does not this statement, then, logically recognize that the testimony must be considered before an instruction will be declared to be prejudicial, although erroneous? If it does (and I submit that this is the only logical conclusion to be deduced from it), then it must follow, as of course, that a person convicted of a crime cannot predicate alleged prejudicial error upon an instruction alone, when, with the testimony before us, it might appear that it was not. In brief, when it is recognized that a consideration of all the proceedings had in the lower court in any manner bearing on the question raised by an instruction, might show that it was with-

out merit, the rule must be that they must be presented here in an appropriate manner before we can say that an error worked prejudice; otherwise, a defendant convicted of a crime is permitted to gain an advantage by not bringing up the testimony in the case. There may be decisions from other jurisdictions which tend to support the conclusion of the majority, that instructions may be reviewed in the absence of the testimony; but if they do, they are manifestly illogical, and ought not to be followed.

In my opinion the judgment of the district court should be affirmed.

The writer is authorized to state that Mr. Justice Garrigues concurs in this opinion.