## No. 9151.

## DICKENS *v.* THE PEOPLE.

1. CRIMINAL LAW—*Deliberate Murder—Verdict of Murder in the Second Degree.* Where upon the trial of an indictment for murder, the evidence shows that the crime was deliberate, and no fact is shown leading to a contrary inference, there should be no conviction of the crime in any less degree. The refusal of the court below to instruct accordingly on request of the prisoner is prejudicial error.

2. *Instructions—Misleading.* An instruction assuming facts, even impliedly, of which there is no evidence, is misleading and prejudicial error.

3. *Error—Presumption.* Error is presumed to be prejudicial unless the contrary affirmatively appears.

*Error to Boulder District Court, Hon. Neil F. Graham, Judge.*

Messrs. HAYT, DAWSON & WRIGHT, Mr. GRANT E. HALDERMAN, Mr. JACOB SCHEY, for plaintiff in error.

Hon. LESLIE E. HUBBARD, Attorney General, Mr. CHARLES ROACH, Mr. RALPH E. C. KERWIN, Assistant Attorneys General, for The People.

Mr. Justice Bailey delivered the opinion of the Court.

JUST after dark, on the evening of November 30th, 1915, about the hour of eight, William H. Dickens, of Longmont, Colorado, was shot to death while sitting with his wife in a room of his home in that city. The fatal shot was fired from the alley way near the house, and the bullet penetrated the window pane in front of which Mr. Dickens sat, before reaching its objective. The defendant, Rienzi C. Dickens, a son of the dead man, was indicted for the killing, charged with the crime of murder.

The evidence, without cavil or dispute, shows that the killing was accomplished by lying in wait, that it was done maliciously, premeditatedly and deliberately, in cold blood, an assassination pure and simple. There was not a scin-

tilla of evidence to show that the killing was done in any other manner than as above stated. The defendant entered a plea of not guilty, and the issue was whether Rienzi was guilty of murder of the first degree, or not guilty, and under the proofs that was the only possible issue.

Upon this undisputed state of facts, over the protest, objection and exception of the defendant, the court instructed the jury that it might return a verdict of either first degree murder, or one of second degree murder, both of which degrees were correctly defined, or a verdict of not guilty. The defendant requested an instruction to the effect that the evidence showed that in the killing first degree murder was committed, and that their verdict should be either guilty of that degree or not guilty. This instruction the court refused, to which ruling the defendant reserved an exception. Error is assigned on both propositions.

The judgment must be reversed for the error of the court in giving the instruction which permitted a verdict of second degree murder, and in declining to give the instruction tendered to the effect that, under the evidence, only one of two verdicts was competent, either one of first degree murder, or one of not guilty. There are numerous other assignments of error, but the court is of opinion that the case should be determined upon the ones above suggested.

The action of the court in reference to these instructions is in conflict with the holding of this court in *Ehrhardt v. People*, where Mr. Justice Campbell, in the opinion therein, said:

"The evidence as abstracted does not call for an instruction as to murder of the second degree. Why the jury so found we do not know, and speculation about it is useless. Counsel has made no argument that defendant was prejudiced by this action, but we observe that it is inexplicable.

"If defendant administered poison to his wife and she died from its effects, he was guilty of murder of the first, not of the second, degree. If he did not so kill her, he

should have been acquitted." *Ehrhardt v. People,* 51 Colo. 205, 206, 117 Pac. 164.

Also such action is in conflict with what was declared by this court in *King v. People,* as follows:

"The statute makes a homicide committed in the perpetration or attempted perpetration of robbery (or lying in wait) murder in the first degree, and the substantial effect of the instruction was to impose the duty upon the jury to ascertain whether the robbery had been committed or attempted, and if so, whether the homicide had been committed in the perpetration thereof. If both were found in the affirmative beyond a reasonable doubt, the statute fixes the homicide as murder of the first degree, and under such circumstances that degree is the only grade of the offense of murder the evidence will support. * * * Under such circumstances there is but one grade of the offense, that is, murder in the first degree." *King v. People,* 54 Colo. 122, 126, 129 Pac. 235.

In this connection the following additional cases from this court are directly in point, and demonstrate beyond controversy that prejudicial error was committed in this connection: *Smith v. People,* 1 Colo. 121; *Reagan v. People,* 49 Colo. 316, 112 Pac. 785; *Carpenter v. People,* 31 Colo. 291, 72 Pac. 1072; *Mow v. People,* 31 Colo. 361, 72 Pac. 1069.

In *Smith v. People, supra,* at page 146, this was declared by the court:

"If, in a case of felonious homicide, the evidence shows the killing to have been deliberate and intentional, there is no question of manslaughter presented, and therefore no reason for submitting that question to the jury. To require the jury in such a case to pass upon the question of manslaughter would be as unreasonable and absurd as to instruct them respecting the crime of larceny."

Also in the case of *Reagan v. People, supra,* at page 326, this court said:

"The defendant was on trial for a murder committed in perpetrating a robbery. Taking human life in such cir-

cumstances was murder of the first degree, so that defendant was either guilty of that degree of homicide, or not guilty at all. It is not error to refuse instructions which are not applicable to any facts or testimony in the case."

In *Mow v. People, supra*, at page 361, this court was considering the question of the failure of the court in a homicide case to instruct upon the degree of manslaughter, in which case no instructions on that subject had been requested, and this was said:

"Mere non-direction is not reversible error unless a specific instruction, good in point of law, covering the omission, was requested and refused."

So here the mere failure to give such an instruction limiting the verdict of guilty of first degree murder or acquittal might, in the absence of a request therefor, not have been reversible error, but as the defendant asked such an instruction and the court refused to give it, under the foregoing authority such refusal was obviously reversible error. Defendant had a right to have given to the jury the rules of law applicable to the evidence, and none other. That right was denied him when an instruction was given to which no evidence was applicable, and when the only instruction in this connection applicable to the evidence was refused.

Under an improper, erroneous and misleading instruction, to which objection was made and a proper instruction tendered on the precise point, which the court declined to give, the jury was afforded an opportunity, through compromise and trade, to reach a verdict which had no proof whatsoever to support it. Such a verdict can not properly, and ought not to, stand. Here appears the strange anomaly of a man convicted of, and sentenced for, an offense which the evidence totally fails to show was ever committed by him, or by any one else, or at all.

It is uniformly held that instructions should not be given concerning questions not supported by the evidence. Such instructions are regarded as necessarily misleading and

prejudicial.   *Coors v. Brock,* 44 Colo. 80, 96 Pac. 963 ; *Fisk v. Light Co.,* 3 Colo. App. 319, 33 Pac. 70.

In *Fisk v. Light Co., supra,* the court, at page 324, said:

"The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous. It is calculated to bewilder and mislead the jury by producing the impression that in the mind of the court, some state of facts, as the instruction supposes, may be inferred from the evidence given, or concealed within it.   The authorities upon this proposition are numerous and uniform.   *Breeze v. State,* 12 Ohio N. S. 146, 80 Am. Dec. 340; *Ely v. Tallman,* 14 Wis. 28 ; *Hill v. Canfield,* 56 Pa. St. 454; *Atkins v. Nicholson,* 31 Mo. 488; *Bensley v. Brockway,* 27 Ill. App. 410."

In view of the conclusive character of the evidence in this case as to the degree of the offense committed, the charge of the court permitting the jury to find second degree murder could not have failed to mislead and confuse them, and by all of the authorities was, under such circumstances, prejudicial and reversible error.   *State v. Vance,* 80 Ala. 1.   Such instruction not only necessarily had the effect to mislead, confuse and distract the attention of the jury from the real issue, but it further gave it to understand that the judge was of opinion that such a verdict found support in the testimony, when in truth and in fact there is a total lack of testimony as a basis for the verdict returned.   In this connection it is worthy of note that an instruction, although ostensibly for the benefit of the defendant, which may mislead the jury is ground for reversal.   *Patterson v. State,* 60 S. W. (Texas) 557.

As bearing on the duty of the court to confine its instructions to matters supported by the proofs, we cite and quote from the following authorities:   "When, on the evidence, the accused is clearly guilty of murder of the first degree, or not guilty, it is not only the right, but the duty of the court to so instruct the jury."   *Fertig v. State,* 100

Wis. 301, 75 N. W. 960.  In *State v. Froelick,* 70 Iowa 213, 30 N. W. 487, it is held that an instruction as to a degree of crime less than that shown by the evidence is improper. In *State v. Mahly,* 68 Mo. 315, the court held that an instruction as to second degree murder where the evidence showed a crime of first degree murder was error.  The evidence showed a crime of peculiar atrocity, the deliberate killing by the accused of his stepchild.  The court said: "Courts should not humor or encourage the sentimentalism of juries who shrink from finding an accused guilty of the highest crime of which the evidence proves him guilty, by giving instructions authorizing them to find him guilty of a lower grade, of which there is no proof of his guilt.  If they have a reasonable doubt of his guilt of the only crime which the evidence tends to prove, they should acquit and not compromise with that doubt by finding him guilty of a lower grade of offense.  Instructions in regard to the lower grade, not warranted by the evidence, operate as persuasives to juries to convict of one of those grades when they should convict the accused of the highest, or acquit him altogether.  The court erred in giving the instruction defining murder in the second degree, because there was no evidence to support it."  In *State v. Stoeckli,* 71 Mo. 551, the court reversed a judgment in a murder case, as it said:  "Because the Superior Court erred in instructing the jury as to murder in the second degree, when under the facts shown by the evidence, if defendant committed the homicide at all, he was guilty of murder in the first degree and of no other grade of homicide."

It is to be observed that in the above cases there was no request for an instruction such as was made in this case, but the judgment was reversed because of the instruction as to second degree murder.  Of course in view of the requested instruction here a much stronger case of error is presented than in the cases cited.

As indicating how utterly misled and bewildered by this instruction the jury must have been, we need only to point out that, although there was not an iota of testimony to

establish any crime except that of first degree murder, yet it found that the defendant maliciously killed his own father, and still returned a verdict of murder of the second degree only, and further recommended him to the leniency of the court.

It is vigorously contended that, in as much as the second degree murder instruction, although erroneous, was favorable to the defendant, in that it gave opportunity to the jury to reduce the degree of the offense, the error was not prejudicial. In considering this contention it should constantly be borne in mind that our court has definitely determined that error is presumed to be prejudicial unless it affirmatively appears from the record that it is not so. *Dekelt v. People,* 44 Colo. 531. Therefore the failure to give the requested instruction to the jury that their verdict must be one of guilty of first degree murder or not guilty was prejudicial, unless the contrary is made affirmatively to appear. It is impossible for human intelligence to divine what, if this correct instruction had been given, the verdict of the jury would have been. There is nothing in the record to show that the jury would have convicted the defendant of first degree murder, and in the absence of such showing it is conclusive that the error in refusing to give the instruction, and in affirmatively instructing that the jury might find a verdict of second degree murder, was prejudicial and constituted reversible error under the settled law of this jurisdiction. Indeed, if the record indicates anything on this point, it manifestly is that, in no event, would the jury have returned a verdict of first degree murder, because, as heretofore pointed out, on evidence supporting only that degree it returned one of second degree, and further recommended the defendant to the leniency of the court. This situation makes it still plainer that the supposed favorable instruction was not in fact such.

We are aware of no legal principle, or of any rule of law or practice recognized in the jurisprudence of this or any other time which gives a trial judge the power and author-

ity to invade the rights of a defendant on trial for his life
and liberty, and to arbitrarily, in the face of a request for
a correct pronouncement of the law, refuse and decline to
give such, and, as was done in this case, incorrectly instruct
the jury, on the theory that such instruction is more favor-
able to the defendant than the true and correct rule as re-
quested by him would be.

Judgment reversed and cause remanded for a new trial.

Decision *en banc.*

Mr. Chief Justice Garrigues, Mr. Justice Burke and Mr.
Justice Scott dissent.

Scott, J., dissenting:

While this court has determined that the refusal of the
trial court to give instructions defining lesser crimes than
charged in the information, but included in the crime
charged, is not error, where the testimony does not require
it; yet, as I construe our decisions, in no case has it been
judicially determined that the giving of an instruction de-
fining a lessor crime, when the testimony does not require
it, does or does not constitute error, nor do I find a case in
our courts where an objection' to such an instruction has
been considered or determined.

Clearly in this case the giving of the instruction com-
plained of was not required, and a failure or refusal of
the court to give it would not constitute error. But this
is a different question from that of whether or not the giv-
ing of such an instruction in a case where the facts do not
require it, and over the objection of defendant, constitutes
error, prejudicial to the defendant.

I am not unaware of the language of Mr. Justice Camp-
bell in the case of *Ehrhardt v. People*, 51 Colo. 205, 117
Pac. 164, wherein it was said:

"If defendant administered poison to his wife and she
died from its effects, he was guilty of murder of the first,
not the second, degree. If he did not so kill her, he should
have been acquitted."

But this language is admittedly *obiter*. The question
was not there determined, nor was it necessary to deter-

mine it, and it was specifically stated in the opinion that the judgment must be reversed for other reasons.

And in the later case of *King v. People,* 54 Colo. 122, 129 Pac. 235, Mr. Justice White seems to have announced a contrary view, wherein it was said:

"If the case had been submitted solely upon the theory that the murder was committed in the perpetration or attempted perpetration of robbery, or if the evidence had been embodied in a bill of exceptions and made a part of the record, and we could clearly discover therefrom that the homicide had been so committed, it might be held that the instruction was without prejudice. *Wickham v. People,* 41 Colo. 345, 93 Pac. 478."

But it will be seen that this language was used as applicable to a supposed case in illustration, and not to the case under consideration. In each of these cases the expressions were not necessary, in that the question was not involved, and precisely opposite views are expressed. Hence we must look elsewhere for whatever authority we may find bearing upon the subject.

The rule covering the whole subject is announced in 16 Corpus Juris 1024 to be:

"Where there is no evidence tending to prove the commission of the lower offense, that is, where the evidence shows that accused is either guilty of the higher offense or not guilty of any, an instruction on the lower offense is not necessary and is properly refused, although giving an instruction in such a case on the lower degree may not be an error of which defendant can complain."

This doctrine seems to be based on the case of *Hopt v. People of the Territory of Utah,* 110 U. S. 574, 28 L. Ed. 262, 4 Sup. Ct. 202. Mr. Justice Harlan, speaking for the court, said:

"The next assignment of error relates to that portion of the charge which represents the court as saying: 'That an atrocious and dastardly murder has been committed by some person is apparent, but in your deliberations you should be careful not to be influenced by any feeling.'

"By the statutes of Utah, 'murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious or premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design, unlawfully and maliciously, to effect the death of any other human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life, is murder in the first degree; and any other homicide, committed under such circumstances as would have constituted murder at common law, is murder in the second degree.' Compiled Laws Utah, 1873, p. 585. The punishment of murder in the first degree is death, or, upon the recommendation of the jury, imprisonment at hard labor in the penitentiary at the discretion of the court; while the punishment for murder in the second degree is imprisonment at hard labor in the penitentiary for not less than five nor more than fifteen years. Ib. 586.

"In view of these statutory provisions, to which the attention of the jury was called, it is clear that the observation by the court that 'an atrocious and dastardly murder had been committed by some person,' was, naturally, regarded by them as an instruction that the offense, by whomsoever committed, was murder in the first degree; whereas, it was for the jury, having been informed as to what was murder, by the laws of Utah, to say whether the facts made a case of murder in the first degree or murder in the second degree.

"It was competent for the judge, under the statutes of Utah, to state to the jury 'all matters of law necessary for their information,' and, consequently, to inform them what those statutes defined as **murder in the first** degree and murder in the second degree. Laws of Utah, 1878, p. 120; Code of Crim. Pro., § 283-4. But it is expressly declared by the Code of Criminal Procedure that, while he may 'state the testimony and declare the law,' he 'must not charge the jury in respect to matters of fact.'"

It will be seen that the statute of Utah, there considered, contained like provisions as the Colorado statute, that "murder perpetrated by poison, lying in wait," etc., is murder in the first degree.

Under the doctrine of this decision it would have been clearly error for the court to have given the instruction here contended for. While it is the province of the court to state all matters of law necessary for their information and to so inform them what the statutes defines as murder to the extent involved, yet the court under no circumstances may charge the jury in respect to matters of fact. The degree of crime is a fact to be determined from the circumstances of the case in the light of the law, and the power to determine such degree is the exclusive prerogative of the jury, which the court may not invade.

If it was error for the court to instruct, as in the *Hopt* case, that whoever was guilty of the particular crime was guilty of murder in the first degree, then it would certainly have been error for the court to have instructed that the specific defendant in this case is guilty of murder in the first degree, or that he is guiltless of any crime, as an alternative.

I am unable to find that the great court from which that decision emanated has ever altered its view in this respect, nor have I been able to find a contrary view expressed by a court of last resort.

In the case of *State v. Bell,* 136 Mo. 120, 37 S. W. 823, cited by Corpus Juris, to support the text, and wherein the facts were such as to constitute murder in the first degree only, the court said:

"It remains only to consider the propriety of giving an instruction for murder in the second degree. The defendant having been convicted of murder in the second degree can not complain that he was not convicted of murder in the first degree, but if there was no evidence upon which to base an instruction for murder in the second degree the court should not have invited the jury to relieve the defendant of the penalty which the law prescribed for his crime."

And again:

"As already said, the error is one of which the defendant can not complain. The judgment is affirmed."

It will be seen that that case involved the precise question considered here. There was no testimony that justified the instruction for second degree murder, just as there is none in this case. The court instructed as to murder in the second degree. It was held not to be prejudicial error.

The decision in the *Hopt* case was followed in the case of *People v. Thiede*, 11 Utah 241, 39 Pac. 837. The following is found in the syllabi of that case:

"It was the duty of the court to define murder and its degrees, but not to hold as matter of law that the defendant was either guilty of murder in the first degree or innocent. It was the exclusive province of the jury to determine whether premeditation or deliberation existed."

Just as in this case, it was the exclusive province of the jury to determine whether or not the murder was committed by lying in wait, by poison, or in any other manner which the statute denominates murder in the first degree.

It was said further on in the *Thiede* case:

"The case of *People v. Hopt, supra,* presented such facts as to irresistibly lead one to the conclusion that, if the defendant committed the crime, he was guilty of murder in the first degree; yet the Supreme Court of the United States (*Hopt v. Utah,* 110 U. S. 582, 4 Sup. Ct. 202); speaking of the case, say: 'It was for the jury, having been informed as to what was murder, * * * to say whether the facts made a case of murder in the first degree or murder in the second degree. It was competent for the judge to * * * inform the jury what the statutes defined as murder in the first degree and murder in the second degree.' "

A homicide committed in the perpetration of one of the crimes enumerated in the statute, in this case by lying in wait, is not a distinct offense, but is but one of the methods of committing murder in the first degree. *State v. Bobbitt,* 215 Mo. 10, 114 S. W. 511.

In that case it was said by the court:

"In *State v. Todd,* 194 Mo. l. c. 394, 395, 92 S. W. 678, it has been ruled by this court that, even if the testimony did not warrant an instruction for murder in the second degree, 'the defendant is in no position to complain, for, if the court erred in instructing for a less degree of murder than that with which the defendant is charged, it was error in the defendant's favor, of which he has no cause to complain.' See also *State v. McMullin,* 170 Mo. loc. cit. 630, 71 S. W. 221; *State v. Frazier,* 137 Mo. l. c. 340, 38 S. W. 913; *State v. Scott,* 172 Mo. 536, 72 S. W. 897; *Johnson v. State,* 44 Tex. Cr. R. 332, 71 S. W. 25; *State v. Billings,* 140 Mo. 193, 41 S. W. 778."

In *Johnson v. State, supra,* it was ruled:

"The court also charged on murder committed in the perpetration of robbery, and instructed the jury that murder committed under such circumstances was murder in the first degree. This is made so by the statute, and under the proof the court was authorized to give this instruction. The court gave a charge on murder in the second degree, on implied malice. Under the evidence we think the court could have well refused an instruction of this character; certainly it was one of which appellant could not complain. The statute makes all murder, whether upon express or implied malice, when committed in the perpetration of robbery, murder in the first degree. However, the court saw fit to give defendant the benefit of a charge of murder in the second degree. This was to his advantage, and in our opinion he can not complain of this."

I must therefore hold that the court did not commit error prejudicial to the defendant in giving the instruction defining murder in the second degree, nor in refusing to instruct that the defendant must be held to murder in the first degree or be declared innocent.

Burke, J., dissenting:

With the conclusion of the majority, that the failure of the trial court to restrict the jury to a verdict of guilty of murder in the first degree, or not guilty, constitutes reversible error, I am unable to agree.

It was the duty of the jurors to take the law from the court, and to that duty they were bound by oath.

Instruction No. 2 authorizes a verdict of guilty of murder in the first or second degree, or not guilty. No. 6 defines murder in the second degree. No. 7 points out the distinction between first and second degree murder. By instruction No. 24 the court submitted to the jury, for their consideration, three forms of verdict; one finding the defendant guilty of murder in the first degree; one finding the defendant guilty of murder in the second degree; and one finding the defendant not guilty. The effect of all the instructions given on this subject is to advise the jury that while defendant was, in fact, either guilty of murder in the first degree, or not guilty, it was still within its province, under the law, to return a verdict of guilty of murder in the second degree. To all such instructions the defendant objected on the ground that there was no evidence to support a verdict of guilty in the second degree, and that the effect of such instructions was to encourage jurors who had a reasonable doubt of defendant's guilt to resolve that doubt against him by compromising upon a verdict of guilty of murder in the second degree.

It is contended now by the defense that the verdict of the jury and its recommendation for clemency demonstrate that the very prejudice which the defendant so feared, and repeatedly pointed out to the court, in fact occurred. It is insisted that where, as here, all the evidence of guilt is of guilt in the first degree, and a jury sworn to return a verdict based solely upon the evidence would be, of necessity, obliged to find first degree or not guilty, and the defendant demands that the instructions be limited to murder in the first degree, a failure on the part of the court to so limit is error; and that the facts in the present case clearly show that such error was prejudicial, and hence this verdict must be set aside.

On the part of the people it is said that it is never error, under any circumstances, for the court to instruct upon both first and second degree murder; that no prejudice

can arise to a defendant under such instructions, where all the evidence tends to show murder in the first degree, and that under the circumstances in the present case, and in similar cases, a verdict of guilty of murder in the second degree, especially when accompanied by such a recommendation to clemency as was here made, demonstrates not that the jurors had any reasonable doubt of the guilt of the defendant, but that, moved by sympathy and compassion for the stricken wife of the defendant, for his small children and his aged mother, if not for the defendant himself, they have simply tempered justice with mercy and returned a verdict in the lowest degree permissible under the law as given them by the court.

Under the · general rule that instructions should be limited to the evidence, and the repeated holdings of our own and other courts that where there is no evidence upon which a verdict in any other than first degree could be based no other grade "should" be given, it seems proper to assume that it was error to instruct this jury on second degree murder, and address our inquiry to the question of prejudice.

It must be observed in the beginning that the position of the prosecution involves no assumption that the jurors violated their oaths to return a verdict "according to the law and the evidence," because however they found the facts, the law, as given them by the court, permitted the finding of a verdict of guilty of murder in the second degree. Whereas the position of the defense involves the direct assumption that some of these jurors, moved by some improper motive, directly violated the solemn oath which they had taken, resolved reasonable doubts against the defendant, and deliberately compromised away his liberty. The theory actually followed by this jury can not, of course, be determined by any evidence before us. We must therefore have recourse to well established rules of law, if such there be, in the solution of the problem.

"It is a general rule of wide application that an Appellate Court will indulge all reasonable presumptions in favor

of the correctness of the judgment, order, or decree from which the appeal was taken." 4 Corpus Juris, P. 731, Sec. 2662.

That this rule is especially applicable to the verdicts of juries has been repeatedly decided, and such a holding is indispensable to the administration of justice.

It often happens that evidence is admitted for a particular purpose and so limited by the court. If it were not so restricted by the instructions, or if the jury disregarded those instructions and considered such evidence for other purposes, prejudicial error would result. Whether the jury in fact makes the proper application it is impossible to say. We therefore resort to the rule above stated and the presumption that jurors keep their oath and follow the instructions given.

"We must assume that the jury followed the instruction, and with that assumption no prejudice could possibly have resulted." *State v. Warner*, 157 Ia. 111, 118, 137 N. W. 466.

It is presumed that a jury, instructed to disregard improper evidence which has been stricken out, followed that instruction. *State v. Levich*, 128 Ia. 372, 375, 104 N. W. 334.

"It is impossible for us to say that the jury disregarded this instruction. There is nothing in the bill of exceptions to show that they did. The presumption is, on the other hand, that they strictly observed it. We must infer that the jury, in the light of the evidence, obeyed the charge of the court." *H. & R. Co. v. Wilgus*, 56 Fed. 587, 589, 6 C. C. A. 45.

"The presumption is that juries do their duty, * * * . The result could not have been otherwise than it was, unless the jury had totally disregarded not only the law, of which it was the duty of the court to apprise them, but would have acted in total disregard of the conceded facts as well. Such were within the range of possibilities, but it would be a violent presumption indeed so to assume in order to predicate the error essential to a new trial of the cause." *State v. Reed*, 52 Ore. 377, 97 Pac. 627, 631.

So in the instant case it is within the range of possibility that some of the jurors had a reasonable doubt of the guilt of the defendant, and in violation of their oath compromised with their fellows on a verdict of guilty of murder in the second degree, "but it would be a violent presumption indeed so to assume in order to predicate the error essential to a new trial of the cause."

In *People v. Holmes* 118 Cal. 444, 50 Pac. 675, the jury returned a verdict reciting:

"We find a verdict of 'guilty' against all others named in the indictment, to-wit: (naming them), and find a verdict of 'involuntary manslaughter' 'not a felony' as charged and laid down by the court under the head of 'involuntary manslaughter,' and pray the extreme mercy of the court in its sentence and punishment."

This verdict the court at first refused to receive and directed the jury to correct it. The jury declined to make such correction. The verdict was thereupon received and recorded and was sustained by the Supreme Court of California, although that court expressly held that the words "not a felony," if given effect, contradicted the words "guilty of involuntary manslaughter," which offense was a felony.

"Juries, it is true, do sometimes find verdicts without any evidence, and the entire lack of evidence proves caprice; but, in the absence of a showing of caprice, courts should attribute to jurors fair intelligence and presume that they have acted on evidence and not without it."

"Assuming this to be so (that the jury may have been misled by an erroneous ruling), nevertheless, an appellate court should not do the technical thing of setting aside a verdict obtained after a long and expensive trial, on the possibility that the jury might have done the unreasonable thing of basing their verdict on testimony which is so shadowy that this court considers it no evidence, and which received no more consideration from the trial judge than was implied in the mere fact of submitting it to a jury." *Betts v. Gahagan,* 212 Fed. 120, 124, 125, 128 C. C. A. 636.

If this jury believed the defendant guilty of murder in the first degree, yet, prompted by mercy, returned him guilty in the second degree, it kept its oath, because the law, as given it by the court, permitted such a verdict. If it had a reasonable doubt as to his guilt in the first degree, and by reason thereof compromised on second degree, it violated its oath, because the law as given it by the court expressly made it its duty to give the defendant the benefit of that doubt and find him not guilty. To presume that it did this is to presume that it disregarded the instruction of the court to give the defendant the benefit of every reasonable doubt. The proper application of the rule above stated precludes such an assumption.

Furthermore, the only question which the jury had to determine was, "Did defendant fire the fatal shot?" In order to find him guilty in either the first or second degree they must have found, beyond a reasonable doubt, that he did. We must assume, if we can reasonably do so, that the jury followed the court's instructions as to reasonable doubt. So assuming, it necessarily follows that the jury found, beyond a reasonable doubt, that the defendant did fire the fatal shot. If they so found, they must have found, beyond a reasonable doubt, that defendant had committed a crime which was, in fact, murder in the first degree.

So reasoning, we must inevitably find that sympathy and mercy dictated, in this case, a verdict of guilty of murder in the second degree, where the verdict should have been guilty of murder in the first degree, rather than find that a dereliction of duty and the violation of a juror's oath dictated a verdict of guilty of murder in the second degree where the verdict should have been not guilty. If such be the fact, it follows that this defendant was benefited, not prejudiced, by the finding, and hence ought not be heard to complain.

It is said that "error is presumed to be prejudicial unless it affirmatively appears that it is not." Even so, this is a mere artificial rule framed for the protection of the parties litigant. It is of no more force than any other similar rule.

, That error was not prejudicial may also be established as well by rule of law as by proof of facts, and the proper application of the rule hereinbefore set out—requiring the assumption that the jury followed the instructions of the court—makes it affirmatively appear that the error was not prejudicial.

I am of the opinion that the Colorado cases cited in support of the conclusion of the majority are not in point, and those cases cited from other jurisdictions which are applicable are based upon false reasoning.

I am authorized to say that Mr. Chief Justice Garrigues concurs in these views.

Decided October 6, 1919.

Rehearing denied January 5, 1920.