THE STATE v. BELL, *Appellant.*

Division Two, November 20, 1896.

1. Criminal Law: MURDER: INSANITY. The defense of insanity on a trial for murder must be established by a preponderance of the evidence; it is not sufficient for the defendant to raise a reasonable doubt as to his sanity.

2. Criminal Practice: CHANGE OF VENUE. The court to which a change of venue has been awarded is not required to dismiss the case because of inaccuracies of the clerk in certifying the transcript of the record, but may permit its correction.

3. Criminal Law: MURDER: INSTRUCTIONS. The court should not give an instruction on murder in the second degree where the evidence shows only murder in the first degree; still the giving of such instruction is not error of which the defendant can complain.

*Appeal from Dallas Circuit Court.*

AFFIRMED.

*R. F. Walker*, attorney general, for the state.

The court will not consider the bill of exceptions which is embodied in the transcript in this case, for the reason that the same has not been signed by the judge who tried the cause. R. S. 1889, sec. 2167; *Garth v. Caldwell*, 72 Mo. 622. This being true, defendant's appeal must be determined from the record proper on which the judgment should be affirmed; the indictment charging the crime in the language of the statute and there being no error prejudicial to the rights of the defendant.

GANTT, P. J.—At the September term, 1893, of the circuit court of Webster county James Bell was indicted for the murder of John Harrison on the second day of September, 1893. He was duly arraigned and the cause continued to the March term, 1894, at which last mentioned term he applied for and obtained a change of venue to Dallas county. In the Dallas court he moved to dismiss the cause on account of certain inaccuracies in the transcript certified by the clerk of the Webster court, which motion was overruled and at the October term, 1894, his case was again continued. He was put on trial at the March term, 1895, and convicted of murder in the second degree and his punishment assessed at forty years in the state penitentiary, from which sentence he appeals to this court. The transcript was certified to this court in July last.

We are again constrained to call attention of the circuit and criminal courts to these inexcusable delays in certifying criminal causes to this court and to ask their co-operation in preventing them in the future.

The defendant is not represented by counsel in this court but we have gone laboriously through a great mass

of evidence and the whole record to ascertain whether reversible error was committed on the trial.

The facts surrounding the case are very meagre. The defendant was a man about sixty-two years old. He had been a great drunkard. His custom was to go to Marshfield about once a week and invariably become intoxicated. When drunk he was exceedingly disagreeable. There is no evidence of previous bad blood between the deceased and the defendant. The deceased Harrison was a young married man. He was engaged in running a threshing machine for a neighbor and on the day he was killed had come to Marshfield horseback. It appears that during the night the defendant and others had congregated on the platform of the railroad station of the St. Louis & San Francisco Railroad, which has a line through said town. A young man by the name of Connelly and the defendant had had a difficulty and were engaged in a wordy altercation when Harrison, the deceased, came to the station. Harrison at once stepped up to the defendant and placed his hand on his shoulder and said, "Hello, Uncle Jim, what is all this about." Thereupon defendant desisted from his quarrel with Connelly and walked aside with deceased out of the hearing of the other bystanders. After talking for sometime in an apparently friendly manner they started back to the depot and when they had come within a few feet of the others, defendant was heard to say "Old Jim Bell wouldn't kill a man," and then Harrison said to him, "I had my mind made up once to fix your old flint," or words to that effect, whereupon defendant answered, "You thought you would fix old Jim, did you?" and holding his head down a moment with his hand in his pocket he suddenly threw his left hand on Harrison's shoulder or around him and struck him three licks with his right hand in rapid succession, and immediately turned and

ran away.   Harrison staggered and clasped his hands to his side and said, ".Boys, he's got me."   "I am hurt and bad hurt."

An examination disclosed that defendant had stabbed deceased five times inflicting five different incised wounds.   The knife penetrated the abdominal cavity and entered the bowels in the ascending colon. This wound was pronounced mortal and from it he died the next day.

The defense was insanity.   Dipsomania was the alleged form of insanity.   There was much evidence to establish this theory both medical and otherwise.

On the part of the state the proof tended strongly to prove that Bell was perfectly rational and capable of transacting all his business when sober, but was a violent and dangerous man when drunk.

The court submitted the question of insanity to the jury under instructions that have been approved again and again in this court.   The defendant prayed certain instructions which the court properly refused. Several were merely repetitions of those given by the court *ex mero motu* and the others contained the doctrine that defendant was only bound to raise a reasonable doubt as to his insanity and was not bound to establish his insanity by a preponderance of the evidence, and of course should have been refused as the law has been settled to the contrary since *Baldwin v. State*, 12 Mo. 223.   *State v. Redemeier*, 71 Mo. 173; *State v. Pagels*, 92 Mo. 300.

There was no merit in the motion to dismiss the case.   The mere inaccuracies of the clerk of Webster county in certifying the transcript did not affect the jurisdiction of the Dallas court to require correction of the transcript or to permit as it did in this case the correction thereof upon the application of the prosecuting attorney by filing an amended transcript which

cured all the imaginary defects.    Under the statute we have sent for and examined both of the original transcripts filed in the Dallas court and find nothing to justify the theory that the Dallas court was not authorized to proceed with the trial of defendant.

It remains only to consider the propriety of giving an instruction for murder in the second degree.    The defendant having been convicted of murder in the second degree can not complain that he was not convicted of murder in the first degree, but if there was no evidence upon which to base an instruction for murder in the second degree the court should not have invited the jury to relieve the defendant of the penalty which the law prescribed for his crime.    Were the ingredients of murder in the first degree in the case?

The killing was in no sense accidental.    It was accomplished with a deadly weapon.    The law then presumes the malice and an intention or design to kill "for the law adopts the common rational belief that a man intends the usual immediate and natural consequences of his voluntary act."    *McCue v. Com.*, 78 Pa. St. 185.    It is true the motive is to us obscure, perhaps inscrutable, but the act itself was there and so simple and atrocious in itself that if the defendant was not insane it was perfectly obvious to his senses and the effect inevitable to his mind.    It is true the time for deliberation and premeditation was short but during those moments in which he stood still with his head down and his hand on his knife in his pocket it was not too short for him to consciously determine in his own mind to kill the unoffending and unarmed man standing by him.    Deliberation as used in this statute does not mean brooded over, considered, reflected upon for a week, a day, or an hour, but it means an intent to kill executed by a party not under the influence of violent passion suddenly aroused by some provocation

but in the furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose. *State v. Wieners*, 66 Mo. 13; *State v. Fairlamb*, 121 Mo. 137. As said by Chief Justice AGNEW in *Com. v. McCue, supra:* "Human reason will not tolerate the denial that a man who intentionally not accidentally fires a musket ball through the body of his wife and thus inflicts a mortal wound, has a heart fatally bent on mischief and intends to kill."

Immediately after stabbing his victim to death the defendant ran away, before the deceased made any outcry, or any of the bystanders were aware of his dastardly deed, thus indicating a clear consciousness of the nature of the act he had just perpetrated. We have no hesitancy in saying that all the essentials of murder in the first degree were present in his act.

Was there any provocation to reduce it to the second degree? We find none whatever. The evidence shows beyond a peradventure that the deceased was conducting himself in an exceedingly friendly manner to defendant; no word of approbrium or anger escaped his lips. All that he said was in reply to the assertion of defendant that deceased knew "Old Jim Bell wouldn't kill a man," and that was that at some time in the past "He had about made up his mind to get his (Bell's) flint." All the witnesses agree that not only was this not said an in angry tone but it was not even loud. All parties thought the manner of both defendant and deceased was pleasant and friendly until defendant stabbed deceased and ran away. Without going into the question of how much provocation will reduce murder from the first degree to the second it is clear there was none in this case and the court should have so said in its instructions. *State v. Ellis*, 74 Mo., *loc. cit.* 220.

As already said, the error is one of which the defendant can not complain. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.