THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARLOS MARCHAND PAZ, Defendant and Appellant.

No. 6639. Argued April 18, 1938.—Decided July 28, 1938.

*Luis Muñoz Morales, R. V. Pérez Marchand, Angel M. Villamil, Alfonso Lastra Chárriez* and *Angel D. Marchand Paz* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

On the night of June 5, 1936, Orlando Colón, a policeman, was shot to death when about to mount the staircase leading to his home. From the testimony of Dr. Basilio Dávila, the physician who performed the autopsy, it appears that the deceased was attacked from behind and that three bullets found their way into his body. Subsequently the present appellant, Carlos Marchand Paz, was arrested and charged with the above murder. After a plea of not guilty, the defendant was brought to trial on December 11, 1936, and seven days thereafter convicted by a jury, of second degree murder. The District Court of San Juan, after denying a motion for a new trial, sentenced him to 20 years at hard labor.

Defendant appealed both from the judgment and the denial of a new trial. It is convenient to state the theory of the prosecution as well as that of the defense.

"Murder in the first degree" was the keynote of the People's case against the defendant. Here were the closing words of the district attorney's presentation of the case to the jury:

"Gentlemen of the jury, that is the case which the district attorney is going to present to you, and once he has proved those facts, as he will indeed prove them, I shall request from you the only possible verdict in this case: a verdict of murder in the first degree."

The theory of the prosecution was that the defendant, on the night of the murder, awaited and followed close upon the heels of the policeman as the latter was going home; that when the policeman was about to ascend the stairs or had actually mounted several steps, the defendant fired two shots which mortally wounded him and as he fell into the arms of his wife, fired and wounded him still a third time. To establish a motive and to show the probable state of mind of the defendant shortly before the killing, the district attorney proposed to offer evidence of the shooting which took place in Río Piedras in October 1935, and in which four or five members of the "Nationalist Party" (*Partido Nacionalista*) were killed by the police. He stressed the fact that the defendant was a nationalist and that when arrested he handed over to Enrique Ramírez Brau, a newspaper man, the watch of one of the Nationalists who had been killed in Río Piedras by the name of Pepito Santiago with the following instructions:

"Please, deliver this to Mr. Pedro Albizu Campos; tell him that that is the watch of Pepito Santiago, and that Carlos Marchand Paz sends it to him."

For the same purpose the district attorney announced that he was going to prove that a special policeman, Cándido Antonmattei, about three weeks before the murder, was called upon to intervene one night, about midnight, over the hoisting of the nationalist flag at the municipal building (*alcaldía*) of Río Piedras; that he found a group of young nationalists

there, among whom was the defendant, and that when he attempted to investigate the incident, he was assaulted by the group, and disarmed; was beaten with his own club and then struck in the face by the defendant.

The theory of the defense was twofold. It rested upon an alibi as to the whereabouts of the defendant on the night of the murder, and upon the supposed confession of the crime by a third person.

■■ The first two assignments of error raise a question as to the correctness of the admission of evidence to establish a motive or state of mind. More particularly, objection is made to the testimony of Cándido Antonmattei and Domingo Beniamino.

Antonmattei testified with regard to the event at the municipal building of Río Piedras on a night shortly before the killing. Beniamino described the course of events which had led to the killing of 4 or 5 Nationalists in October of 1935. Both the prosecution and defense counsel have assumed that evidence tending to show a motive or state of mind from which intention or probability of guilt may be more readily deduced, is admissible. Motive, of course, plays an important role in every crime and for that reason is a most important link in the evidence of the prosecution. In cases where the guilt depends upon circumstantial evidence, proof of a motive is, of course, even more important.

As to Antonmattei's testimony, the trial judge said:

"The court believes that the evidence offered is admissible for the purpose of proving the motive and the defendant's state of mind at the time. The evidence is admitted."

Counsel for the defense took exception.

Beniamino's declaration was admitted by the court as part of the motive, and defendant excepted.

Although we have not been able to find a clear and concise exposition of this supposed motive or state of mind, it is more or less patent that the district attorney was attempting to establish the existence of a feud between the police and

members of the Nationalist Party, a feud which had its origin in the unfortunate affair at Río Piedras. Subsequent events which now have a public character have more than borne out the nature of the animosity created or augmented by this Río Piedras incident. Nationalists made public their refusal to recognize the established authority of the American Government on the Island. Of course, it was still necessary to associate or connect the present defendant with this rebellious attitude. The first step was to show that he actively took part in an incident which identified him with the insubordinate movement against the government. One must not lose sight of the fact that the building chosen by Marchand and his companions for their center of action was the seat of the local government of Río Piedras. The assault and battery upon Antonmattei was apparently unjustified as there was no evidence introduced by the defense to show any physical provocation on the part of the witness. It was sufficiently material to bring out the reckless attitude of the defendant and his followers towards a policeman. The incident marked the defendant as an active rather than a passive member of the Nationalist Party and especially evidenced the contempt in which he held the police.

The evidence reasonably connected the defendant with the group of so-called nationalists who felt personally aggrieved by the powers exercised by the police and who manifested a determination to ignore its authority. The whole testimony must be taken together. The shooting at Río Piedras and the incident at the municipality, as introduced before the jury, were not, in our opinion prejudicial to the defendant in the way that he now contends although the Nationalist character of the defendant need not be unduly stressed. It was clearly brought out upon cross-examination that defendant was in no way personally involved in the events of October 1935. If no direct evidence had been produced against the defendant, the above testimony could have been correctly disregarded by the jury.

In most of the cases cited by the appellant, and especially in the case of *People* v. *Juarbe,* 43 P.R.R. 428, the actual commission of a crime was introduced for the purpose of showing the criminal intent. There was a total failure to connect the crimes with each other. The evidence against the defendant was purely circumstantial. The danger of prejudice to defendant was so great as to override its slight materiality. We are ready to accept, with the appellant, that ordinarily the commission of an offense is not admissible to show its repetition in the particular case being tried. Indeed, the general rule is against its admission, except in those cases where the facts are offered to show design, motive, intent or the like and are shown to be clearly relevant for that purpose. See Wigmore on Evidence, vol. I, par. 216, at p. 462. If not relevant they should be excluded as against the character rule. In this case we think that the evidence afforded a reasonable inference, as to the design, motive or intention for the crime and furthermore that it was not so prejudicial to defendant that it should have been excluded as tending to prove too much. The first two errors, therefore, were not committed.

■■ The reason for the next two assignments of error arose out of the following incident. The defense's first witness was Antonio Rivera Córdova. From the questions addressed to him it became apparent that counsel was trying to draw some sort of an admission or confession of guilt. The witness, however, denied any knowledge whatsoever about the case and emphatically denied having confided in a third person.

Immediately thereafter, defendant placed a witness by the name of Cáceres Barreras on the stand and asked him: "Did Antonio Rivera Córdova say anything to you?" The district attorney objected to the question and, after the jury was withdrawn from the courtroom, argued extensively with regard to the inadmissibility of any statements that Rivera Córdova might have made to the witness, on the ground

that evidence of the admission or confession of a stranger that he perpetrated the offense was not admissible as substantive evidence tending to exculpate the accused. The court sus· tained the objection and defendant excepted.

Counsel for defendant then moved to be allowed to impeach his own witness, Rivera Córdova, by introducing evi· dence to show prior inconsistent statements. The district attorney again objected and was sustained by the court. Defendant excepted.

Although the assignments are more detailed, in substance, they imputed error to the trial court in refusing to admit evidence tending to show that a third person or stranger, and not the defendant, was the real culprit, and in refusing to permit impeaching evidence with regard to prior inconsistent statements.

Whatever the alleged purpose, there is no doubt that the real motive of the defense in offering the testimony of Cáceres Barreras and Antonio Moreau, both nationalists and companions of the defendant, was to establish one of the principal grounds of defense, i. e. the guilt of a third individual. We feel that the lower court grasped that fundamental design and did all in its power to prevent its admission. We are more or less convinced that if the testimony offered was not admissible *per se,* it was correctly excluded when an attempt was made to introduce it for the purposes of impeaching the defendant's own witness. The lower court's conclusion that one cannot accomplish indirectly what one may not do directly, in our opinion, is correct. In considering the state of the jurisprudence on this precise question we have found that the great weight of authority supports the ruling of the lower court. From the highest court of the United States downward, it has been consistently held that such evidence is not primarily admissible. See the notes in 35 A.L.R. 441 and 48 A.L.R. 348 for a good discussion of the rule and its exceptions. The case of *Donnelly* v. *U. S.,* 228 U. S. 243, is a leading authority for that view

and has not, as far as we know, been reversed or modified. For subsequent cases citing the *Donnelly* case, *supra,* reference may be had to Rose's Notes on U. S. Reports, Vol. 7, 1932 Supplement at p. 1050 *et seq.* It is true that in Texas and perhaps a few other jurisdictions, there has been some departure from the general rule. However, the tendency, even in those exceptional jurisdictions has been to relax from the application of the rule only in extreme cases where the evidence against the defendant is entirely circumstantial and the case is surrounded with other special circumstances, not evident in the case at bar.

Appellant attempts to qualify the evidence in this case as purely circumstantial. To arrive at this characterization, he contends that the testimony of the "eyewitness" should have been discarded as unworthy of belief. Even assuming that the exceptional rule ought to have been followed, the judge could not anticipate or decide for himself whether these witnesses were to be believed by the jury or not, and much less act on that decision to admit evidence. The position is not well taken.

As the testimony was inadmissible for the purpose of establishing the affirmative defense of confessed guilt by another, it could not be admitted under the pretense of impeaching defendant's own witness.

This court has steadily held that the district attorney may not introduce evidence to contradict one of his own witnesses, unless the purpose of the testimony is clearly and unmistakenly to destroy the effect of the said testimony. The evidence is never admissible to help make out a positive case for the government. *People* v. *Rojas,* 16 P.R.R. 241; *People* v. *Méndez,* 39 P.R.R. 590; *People* v. *Marrero,* 41 P.R.R. 938; *People* v. *Lafontaine,* 43 P.R.R. 21; *People* v. *Plata,* 36 P.R.R. 530 and cases cited in the foregoing citations; *People* v. *Creeks,* 141 Cal. 529; *People* v. *Sliscovich,* 193 Cal. 544; 74 A.L.R. 1042.

The same rule necessarily applies to an attempt of the defendant to build up his own defense under the theory of contradicting one of his own witnesses.

■■ The fifth and sixth assignments of error are directed at some of the instructions of the trial judge with regard to second degree murder.

No exceptions were taken and the principle of *People* v. *Cardona,* 50 P.R.R. 104 and *People* v. *Hernández,* 49 P.R.R. 406 and cases cited is applicable. We question whether the court ever commits error in giving the defendant a chance to be convicted of second degree murder instead of first degree murder. 16 C. J. 1024, sec. 2452; *State* v. *Bell,* 136 Mo. 120, 37 S. W. 823; *People* v. *Thiede,* 11 Utah 241, 39 P. 837 and 13 R.C.L. 757, 781.

In a proper case it is always possible for skillful counsel to show that the defendant is either guilty of first degree murder or should be acquitted.

There are other assignments of error which could be readily cured at a new trial.

■■ The importance of the seventh assignment of error can not be too strongly emphasized. The field of comment by prosecution and defense when addressing the jury at the close of the evidence has been so often dwelt upon by the courts, that little can be added by us. A cardinal rule of conduct is that no comment shall be allowed as to matters which have not come before the jury during the course of the trial. Appellant maintains that this rule was violated by the prosecution, and that such violation was clearly prejudicial to the defendant's case. Here is what happened.

It is contended by the appellant that the district attorney made a statement to the jury in his closing argument which was clearly prejudicial to the defendant's case and was entirely unsupported by the evidence. This contention was presented to the lower court in a motion for a new trial, and was reinforced by four or five affidavits from jurors who attested to having heard the statement. The sworn declarations be-

came necessary because the trial judge was preparing an outline of his instructions at the time and the incident escaped his attention. Unfortunately the chief counsel for the defense was at that moment absent from the room. No counter-affidavits were ever offered and the district attorney apparently has kept silent on the matter. From the above declarations we take the following versions:

Ricardo R. Pesquera, foreman of the jury, said under oath:

". . . . that I perfectly well remember that district attorney Romaní, when addressing us as jurors and in reference to the witness produced by the defendant as having committed the crime, expressed himself contemptuously as follows: . . . 'That the man Rivera Córdova, after testifying, had called at his office to inform him that they had even offered him money to sail to the United States and thus be able to incriminate him.' "

Teodoro Viera, juryman, declared:

". . . . That I remember quite well that, in the said case, while district attorney Romaní was addressing the jury . . . in reference to witness Rivera Córdova introduced by the defendant as the supposed killer of policeman Colón, he stated as follows: 'This witness Rivera Córdova, after testifying, called at my office to inform me that they had offered him $30 to sail away and so be able to accuse him of the crime.' "

Guillermo Ortiz, juryman, said:

". . . That I heard perfectly well district attorney Marcelino Romaní say . . . that Rivera Córdova, a witness for the defendant. . . had called at his office to tell him, (the district attorney), that he had been offered money to sail away and thus be incriminated for the killing of Colón."

In addition thereto; there were affidavits by jurymen Laureano Carús and Luis C. Cuyar which more or less corroborated the above. In several of the affidavits the deponents went on to express the effect which the statement had on their verdict.

When this question was presented to the trial judge on a motion for a new trial, the court disposed of it on the basis of the general rule in California to the effect that the improper conduct or statement of the district attorney cannot be reviewed or relied upon as a ground for reversal or new trial unless the defense object to the improper actions at the moment and give the court an opportunity to cure their prejudicial effect. *People* v. *Amer*, 151 Cal. 303; *People* v. *Fleming*, 166 Cal. 357, and others. The court also mentioned the fact that counsel was not present, and suggested that a general instruction, in which it had admonished the jury to act only upon the evidence before it, had cured the effect of the remarks. The trial judge recognized the well-known exception to the above rule, i.e. that when the conduct or statement is so prejudicial that it can not properly be cured by an instruction, the failure to object is not a bar to its being raised on appeal. *People* v. *McDonald*, 167 Cal. 551; *People* v. *Edgard*, 34 Cal. App. 459, 167 Pac. 891; *People* v. *Sheefield*, 293 Pac. 72 and many other cases. The lower court, however, after an analysis of the evidence concluded that Rivera Córdova's degree of credibility was so low, that in all probability the district attorney's statement had no positive effect on the jury and that any slight effect could have been easily cured or dispelled by a special instruction.

Antonio Rivera Córdova was called by the defendant for the avowed purpose of obtaining a confession from him as to the killing of Orlando Colón. His testimony, however, was entirely negative in character and its deficiency was not allowed to be cured either by positive testimony nor, indirectly, by impeaching witnesses. The supposed confessed killer assumed an air of complete ignorance of the whole situation. The defense expressly asked him whether he had not been to a certain farm early on the morning after the shooting, and there informed Cáceres, Moreau and Marchand (the defendant) that he had killed Colón and "would pour

lead'' *(le metía plomo en el cuerpo)* into anyone who talked. The witness denied all.

Under the above circumstances we must assume that the jury was aware of the proposed defense. The district attorney successfully defeated all attempts to introduce, by other witnesses, evidence of Rivera's intervention in the murder. He could reasonably have rested there and felt confident, in view of the direct evidence against the defendant, that a verdict of guilty would be returned. Nevertheless, not content with his case against the accused, he stated to the jury that the witness had gone to his office after testifying in court, and had told him that the defense had offered him money (some say $30.00), the amount is not important, to leave the island so that the defendant could incriminate him. We cannot absolve the district attorney of an ulterior motive in saying this to the jury. It may be deduced at once that his main purpose was to show that the accused was trying to fabricate a defense, and what is worse, the district attorney was attempting to accomplish his purpose in a manner which in similar matters we have condemned and are not tolerated by the court. *People* v. *Rojas* and others, *supra*. If one remembers that the same district attorney had objected to any evidence or comment on the matter by the defense, his action seems all the more unjustified. This was not a question of improper evidence admitted because the opposing party had not objected, but was a case of presenting directly to the jury and not during the reception of evidence, damaging testimony which very probably could not have been introduced from the witness stand. The conduct of the district attorney had in total probability already impressed an indelible mark upon the minds of the triers of fact. The statement of the district attorney, if believed by the jury, tended towards an admission of guilt by the defendant and indirectly accused the defense of the serious crime of tampering with a witness. We cannot determine the full effect of such a statement, but it was, it seems to us, inevitably prejudicial.

There is such an abundance of jurisprudence upon what constitutes sufficiently improper comment to require the return of a case for a new trial that no definite rule can be established. Each case must rest upon its particular facts. For some jurisprudence on this point, we may cite 2 R.C.L. 438, par. 35, and 16 C. J., sec. 2242; 3 Wigmore 837, sec. 1806 *et seq.* The facts of the case before us speak for themselves. There is no doubt that the jury received what amounted to improper evidence through the mouth of the district attorney and we are convinced that the prejudicial nature of that evidence could not have been cured by anything the judge might have said. The damage was irreparable.

We feel bound therefore, in justice to the defendant, to decide that the remarks uttered by the district attorney in this case, to the effect that the witness, Antonio Rivera Córdova, had gone to his office and told him that the defense had offered him money with which to abandon the island and thus incriminate the witness, were totally improper as well as prejudicial to the defendant and require that the judgment of the lower court be reversed and the case sent back for a new trial, and it is so ordered.

Mr. Justice De Jesús took no part in the decision of this case.