STATE of Missouri, Respondent,

v.

George W. HATFIELD, Appellant.

No. 55637.

Supreme Court of Missouri,
Division No. 2.

March 8, 1971.

As Modified on Courts Own Motion
April 12, 1971.

Motion to Modify Opinion and Motion for
Rehearing or Transfer to Court En Banc
Denied April 12, 1971.

■■■

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

BARRETT, Commissioner.

George W. Hatfield, charged with murder in the first degree in killing Merle E. Rochester, waived a jury (Const.Mo. Art. 1, § 22(a), V.A.M.S.; RSMo 1969, § 510.-190, V.A.M.S.; Cr. Rule 26.01(b), V.A.M.R.) and was tried by the court. The court in its findings of fact and conclusions of law found Hatfield guilty of murder in the first degree and fixed his punishment at life imprisonment.

■■ Attempting to draw an analogy from the microphonic and other eavesdropping devices (State v. Cory, 62 Wash.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352) the appellant's preliminary point is that he was denied effective assistance of counsel resulting in a denial of due process and equal protection of law. The point is presented in this manner: At the outset of the trial appellant's counsel, after being sworn, said that he had recently been of counsel for one Nigh in a trial in Platte County, that he sat at the same counsel table with an assistant prosecuting attorney who eavesdropped on conversations between counsel and his client "and attempts to muzzle them by rephrasing and rewording and misstating those conversations to the witness on the witness stand in order to put before the jury a false impression of what has been transpiring between counsel and his client." Since the same assistant prosecutor was involved in trying this case counsel said that he could not sit at the same counsel table with the prosecutor and properly represent his client and therefore he demanded a separate counsel table. After considerable colloquy the court said, "I don't think it will happen and if I see it happening I will do something about it quickly," and the court denied the request. There is no claim or showing of eavesdropping in this record, counsel claims, however, that by reason of the court's ruling he did not freely communicate with his client and in any event that in the circumstances a showing of prejudice was not required. The right of an accused to counsel, including the right to freely communicate and "to sit with his counsel during the trial or at least be so located that they are able to communicate without interruption" or snoopy eavesdropping, may not be abridged. 21 Am.Jur.2d (Criminal Law) § 312, p. 338. Nevertheless some infringement or abridgement of the right must be shown and the mere fact, as asserted here, that there was but one table for all counsel and clients does not establish the fact, the right is not an absolute and in this court-tried case there is no demonstration of prejudicial error. Annotation 5 A.L.R.3d 1360, 1364.

■ Another unusual collateral point is this: After the formal waiver of jury trial and a thorough understanding between the defendant, his counsel, the court and the state as to the consequences of a court-tried felony the defendant filed a document denominated "Tender of Plea." The defendant Hatfield filed a written statement admitting that he killed Rochester by cutting his throat with a broken beer bottle, he claimed, however, that he did so in self-defense of a knife-attack. In this document he also admits that after Rochester fell to the pavement "I became frightened and I ran away." After solemnly asserting the truth of the facts as he narrated them he tendered a "plea of guilty to the crime of manslaughter." The prosecutor "would not accept a plea on manslaughter" but said, "We are willing to reduce it to second degree murder, Judge, if counsel wants

to consider that." Defense counsel replied, "We are not interested," and the cause proceeded to trial. Attributing to the state numerous unfounded charges of evil-doing, the appellant now asserts that the state having on the record offered to accept a plea to murder in the second degree has "admitted that defendant was not guilty of murder in the first degree" and had no jurisdiction thereafter to charge, try and convict him of that offense.

■ The appellant, admittedly, has "no direct citation of authority" and it may be added neither does he have any indirect authority. It is not necessary to characterize the prosecutor's offer, neither is it necessary to consider the nature of appellant's ·conduct and offer, the court was not a party to any part of the offers and counteroffers, when defense counsel replied, "We are not interested" the court simply said, "All right, are you ready for trial?" and the cause proceeded to trial upon the charge of murder in the first degree with the duty upon the trier of the fact to consider "whether the defendant be guilty of murder in the first or second degree." RSMo 1969, § 559.030, V.A.M.S. There was no claim of promises or of bargains not kept and the appellant disclaims being a party to "plea bargaining" (Lupo v. United States, 435 F.2d 519 (8th Cir.)) and, despite appellant's assertion to the contrary, the prosecutor did not in point of fact reduce or amend the offense charged in the information. RSMo 1969, §§ 545.290, 545.300, V.A.M.S.

■ Pointing in great detail to the various elements involved in the different offenses and degrees of homicide the appellant contends that the evidence was insufficient to "sustain a verdict" of either murder in the first degree, murder in the second degree or manslaughter. In connection with manslaughter it is asserted that he should have been found not guilty "by reason of self-defense." It is not necessary to consider these elaborate arguments in detail or to note the distinguishing factors in the degrees of offenses involving homicides. The fundamental weakness in all the appellant's arguments is that they ignore the fact that he waived a jury trial. In this situation, a jury waived trial, the court's "finding shall have the force and effect of a verdict of a jury" (Const.Mo. Art. 1, § 22(a); Cr.Rule 26.-01(b); RSMo 1969, § 510.190, V.A.M.S.) and the only meritorious question upon this appeal and review is whether "there was substantial evidence to support the finding." State v. Haislip, Mo., 411 S.W.2d 81, 83; State v. Clark, Mo., 438 S.W.2d 277, 279–280. Thus cases involving abstractions relating to "cool blood" and the presence or absence of malice (40 Am.Jur. 2d (Homicide) § 485, p. 737) and the multifarious definitions of terms involved in instructing juries in trials of murder are not too helpful. Despite conflicts in evidence (State v. Williams, 186 Mo. 128, 84 S.W. 924) and proof of degrees of homicide, the killing here admitted (State v. Goodwin, 333 Mo. 168, 61 S.W.2d 960), the question here, as stated, is whether there is evidence to support the court's finding of murder in the first degree.

■ John Meister, a habitue of Sandy's Tavern at 6th and Sylvania in St. Joseph, testified that he went outside the tavern at 10:20. The defendant Hatfield and Rochester were coming out the front door. As they came through the door Hatfield broke a beer bottle on the door facing and held the neck of the bottle in his right hand. As soon as they reached the sidewalk Hatfield "Took after Rocky" with the beer bottle "Backing him up the street" slashing at his neck, "he hit him at least three times" and when Rocky fell to the sidewalk dying Hatfield "run" south. Meister thought the "main damage" to Rocky was on the first lick when the broken bottle cut his throat. Rocky was backing up the street with his hands up and according to the state's witnesses had no weapon. While there were some contradictions in the testimony of other witnesses Meister's testimony was corroborated

by that of the bartender and others. In the trial appellant not only admitted that he cut and killed Rocky with the broken beer bottle, he "admitted that the defendant fled the scene."

In this background the court found that as Hatfield left the building he "took a beer bottle from the bar and broke it * * * thus arming himself with a deadly weapon." State v. Ruck, 194 Mo. 416, 92 S.W. 706, 707; State v. Feeler, 284 Mo. 673, 226 S.W. 15. The court found that upon reaching the sidewalk Hatfield "proceeded to attack the deceased and force him up the sidewalk to the north," that Rocky was "retreating with his hands up * * * unarmed." The court found that Hatfield in slashing Rocky with the broken bottle three times did not act in self-defense and that "he intentionally and without just cause or excuse took the life of Merle Rochester and he did so with premeditation and deliberation." If as Hatfield claims they were engaged in mutual combat with deadly weapons there could be no self-defense (40 Am.Jur.2d (Homicide) §§ 82, 142) and from the repetition of the blows, the viciousness of the attack, the court could infer premeditation and deliberation even though "at the moment." State v. Foster, 61 Mo. 549; State v. Bell, 136 Mo. 120, 37 S.W. 823. Whatever inferences the court may have drawn from various bits of evidence the record supports the court's finding of all the elements of murder in the first degree. State v. Mitchell, Mo., 408 S.W.2d 39, 42–43.

In connection with his motion for a new trial, filed in several parts, the appellant claims that he is entitled to a new trial by reason of newly discovered evidence. In support of this assignment of error he filed the sworn statement of Bonnie Palmer, another habitue of Sandy's Tavern. She says that Rocky "smacked" Shirley Bonar, Hatfield's girl friend, and started out the door with a knife, saying to Hatfield "Come on outside, you no good son-of-a-bitch, and I'll show you what I can do to you." She says that Hatfield went out the door with the broken bottle but about the first time Hatfield swung—"the first time around, you know"—she got scared and ran. Bonnie did not come forward with this information until several months after the trial because of her prior felony record and a penitentiary sentence of three years.

Unlike State v. Murray, 91 Mo. 95, 3 S.W. 397, this was not a circumstantial evidence case and Bonnie's statement does not have the almost certain effect of establishing that crucial evidence employed by the state was untrue. For the most part her statement is merely cumulative in support of Hatfield's testimony, in other respects it was merely contradictory of Meister's testimony and therefore impeaching only. In any event, in this court-tried case the court had Bonnie's statement before him, it does not appear that had she testified at the principal trial that the result would have been changed and the court did not abuse its discretion in denying a new trial on the ground of newly discovered evidence. State v. Smith, Mo., 247 S.W. 154; State v. Watson, Mo., 400 S.W.2d 129.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.