BETTS et al. v. GAHAGAN et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1914.)

No. 1193.

**1. ADVERSE POSSESSION (§ 72*)—"COLOR OF TITLE"—BOND FOR TITLE.**

Where a bond for title is unconditional and calls for no future payment, the presumption, in the absence of any evidence to the contrary, is that the price was paid before or at the time of the signing, so that it is "color of title" to support adverse possession within the seven-year statute of limitations. Revisal N. C. 1905, § 382.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 430–434; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 2, pp. 1264–1273; vol. 8, p. 7606.]

**2. ADVERSE POSSESSION (§ 115*)—COLOR OF TITLE—BOND FOR TITLE.**

Where the purchaser in a bond for title which failed to definitely describe the several tracts, excepting one procured six years later, a conveyance from a third person, and the papers did not refer to each other, and the descriptions in the bond and conveyance did not correspond in area, the court could not hold, as a matter of law, that the bond was merged in the conveyance so as not to constitute color of title, but the question was for the jury.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

**3. ADVERSE POSSESSION (§ 75*)—COLOR OF TITLE—INSTRUMENTS CREATING.**

A deed by the heirs of a deceased owner of land for partition thereof is not color of title within the seven-year statute of limitations. Revisal N. C. 1905, § 382.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 448–450; Dec. Dig. § 75.*]

**4. ADVERSE POSSESSION (§ 71*)—COLOR OF TITLE—INSTRUMENTS CREATING.**

A deed by a grantee in a deed of partition by heirs of the deceased owner to a third person of the land conveyed to the grantee in the partition is color of title within the seven-year statute of limitations, where the third person had no interest in the land outside of the deed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 415–429; Dec. Dig. § 71.*]

**5. ADVERSE POSSESSION (§ 57*)—ACTS CONSTITUTING.**

Proof that land was cultivated under one claiming title and that timber was cut thereon as needed, unaccompanied by any evidence of the length of time of the occupancy by cultivation, did not establish title by adverse possession without color of title under the 20-year statute of limitations. Revisal N. C. 1905, § 384.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278, 655, 667, 687; Dec. Dig. § 57.*]

**6. APPEAL AND ERROR (§ 930*)—VERDICT—PRESUMPTIONS.**

Where the pleadings raised two issues, and on the trial one was supported by evidence, and the other not, a favorable verdict will be sus-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tained on appeal on the presumption that the jury based its verdict on the issue supported by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

**7. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—ERRORS IN INSTRUCTIONS.**

Where, in an action for the recovery of land, defendant relied on the 7 and 20 year statutes of limitations, and the evidence justified a finding in his favor under the 7-year statute, but there was no evidence to support a verdict under the 20-year statute, the error in refusing to charge that defendant could not hold under the 20-year statute was not reversible, since it could not be inferred that the verdict was based on a finding of adverse possession for 20 years merely because the court refused to charge that there was no evidence of adverse possession for 20 years.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

**8. EVIDENCE (§ 274*)—DECLARATIONS—ADMISSIBILITY.**

Where, in an action for the possession of land, defendant relied on color of title, and that a poplar was on the line of the true location of the tract as described by the papers, constituting his color of title, and a plat showed that the line called for would run near the poplar, testimony that the deceased owner of the adjacent land had pointed out the poplar as on the line was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1121–1134; Dec. Dig. § 274.*]

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; James E. Boyd, Judge.

Action by Harriet L. Betts and another against Ben W. Gahagan and others. There was a judgment for defendants, and plaintiffs bring error. Affirmed.

See, also, 205 Fed. 890, 124 C. C. A. 203.

Zebulon Weaver and Alf S. Barnard, both of Asheville, N. C. (Duff Merrick, of Asheville, N. C., on the brief), for plaintiffs in error.

Julius C. Martin, of Asheville, N. C. (Martin, Rollins & Wright, of Asheville, N. C., on the brief), for defendants in error.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. This is one of the many perplexing cases depending on location and adverse possession of lands long regarded of such small value that their boundaries and even their titles were considered of little consequence. The action is for the recovery of possession of a small strip of land on which is situated a baryte mine operated by the defendants. The verdict and judgment was in favor of the defendants, and the plaintiffs ask for a reversal, alleging error in the admission of testimony and in the charge to the jury, and insisting that the District Judge should have directed a verdict in favor of the plaintiffs.

There is no dispute as to the regularity of the plaintiffs' claim of title commencing with a grant from the state of North Carolina to John Gray Blount, dated November 29, 1796, for 300,000 acres, and running through successive conveyances to the plaintiff Harriet L.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Betts, who conveyed after the commencement of the action to the plaintiff Laurel River Logging Company.

After proof of their own title, the plaintiffs, for the purpose of showing that the defendants' title was derived from the same source and did not cover the land in dispute, introduced a bond for title from John Gray Blount, from whom plaintiffs claimed, to James Allen, his heirs and assigns, dated October 25, 1828, covering 7,000 acres, and a deed of conveyance from Blount's executors to George W. Gahagan, the ancestor of the defendants, dated January 29, 1835. The evidence of Garrett, the surveyor appointed by the court on behalf of plaintiffs, was to the effect that the location by survey of this conveyance from Blount's executors to Gahagan excluded the land in dispute; and the plaintiffs contended that while the conveyance to Gahagan did not expressly refer to the bond, and there was no direct evidence of its assignment, yet the circumstances led inevitably to the conclusion that the deed was given to Gahagan as assignee of Allen in performance of the bond.

The circumstances mainly relied on to support this position are: (1) That Allen gave to George W. Gahagan his bond for title dated February 11, 1828, covering several tracts of land in the same vicinity, the description of one of the tracts corresponding in a general way with one of those conveyed by Blount's executors to George W. Gahagan; and (2) that the conveyance to George W. Gahagan by Blount's executors excepts all the lands conveyed away before October 25, 1828, the date of the bond from Blount to Allen. Upon the inference of fact thus arrived at, that the conveyance to George W. Gahagan of January 29, 1835, was in satisfaction of the bonds from Blount to Allen and from Allen to Gahagan, the plaintiffs rest the legal proposition that both bonds were merged in the conveyance and any claim by the defendants under either of them as color of title or otherwise could not extend beyond the land covered by the deed.

The defendants denied that the conveyance from Blount's executors to their ancestor, George W. Gahagan, did not cover the land in dispute, and relied also on the claim of adverse possession for 20 years without color of title, and adverse possession for 7 years with color of title, under the following sections of the Revisal of North Carolina of 1905:

"382. Seven years' possession under color. When the person in possession of any real property, or those under whom he claims, shall have been possessed of the same, under known and visible lines and boundaries, and under colorable title for seven years, no entry shall be made or action sustained against such possessor by any person having any right or title to the same, except during the seven years next after his right or title shall have descended or accrued, who in default of suing within the time aforesaid, shall be excluded from any claim thereafter to be made; and such possession, so held, shall be a perpetual bar against all persons not under disability."

"384. Twenty years' adverse possession. No action for the recovery of real property, or the possession thereof, or the issues and profits thereof, shall be maintained when the person in possession thereof, or the defendant in such action, or those under whom he claims, shall have possessed such real property under known and visible lines and boundaries adversely to all other persons for twenty years; and such possession so held, shall give a title in fee to the possessor, in such property, against all persons not under disability."

[1] We consider first whether the trial judge should have instructed the jury as requested by counsel for plaintiffs that the evidence was not sufficient to bring the defendants' possession under the protection of section 382. The plaintiffs contend that the defendants produced no color of title. Against this contention the defendants relied on several papers, the first being the bond for title from Allen to George W. Gahagan above mentioned. By this paper Allen undertook to make title to George W. Gahagan within 12 months from February 11, 1828, to several tracts of land all of which were very indefinitely described, except the last, which was to run "with the road one hundred rods wide so as to let the said road be in the middle." The survey of this location shows that a tract of land laid off by measuring 50 rods on each side of the road referred to, as it varies its course, will cover the land in dispute.

[2] Since the bond is unconditional and calls for no future payment, the presumption is that the purchase price was paid before or at the time the bond was signed; and, after payment of the purchase money, a bond for title is "color of title" to support adverse possession even against the vendor. Avent v. Arrington, 105 N. C. 377, 10 S. E. 991. It follows that this bond for title could be relied on as color of title unless it was merged in a conveyance from Blount's executors to George W. Gahagan. If, as contended by plaintiffs, the conveyance made in 1835 was given and accepted as a performance of the bond, then the bond could not be relied on against the vendor or his grantees, as color of title to land beyond the limits of the conveyance, for the conveyance would be a satisfaction of all rights of the vendee under the bond. Although there is reason to infer that the conveyance in this instance was in satisfaction of the bond, it would not be safe to say that the evidence admits of no other reasonable inference. Against such an inference are the considerations that the papers do not in any way refer to each other, that they are more than six years apart in date, that the bond and the conveyance were executed by different persons in a remote period when little attention was given to exact locations or sources of title, and that there was evidence that they did not correspond in area. From these facts it would not be unreasonable to infer that George W. Gahagan entered and held under the Allen bond, and afterwards to strengthen his claim to this land and to acquire title to other lands took an independent conveyance from the executors of Blount. The District Judge was therefore right in refusing to hold the Allen bond for title unavailable to the defendants as color of title.

The plaintiffs were entitled, however, to the instruction requested that, if the jury found that the conveyance to George W. Gahagan was made for the purpose of carrying out the terms of the bond from Allen, then the defendants could not rely on the bond as color of title; but this principle was made sufficiently clear in the general charge.

[3] The paper next relied on as color of title was an agreement or deed made by the heirs of George W. Gahagan for the partition of the lands inherited from him. This paper did not purport to evidence an acquisition of any rights in land, but only the assignment of a right already existing. It was not available, therefore, as color of title. Carson v. Carson, 122 N. C. 645, 30 S. E. 4.

[4] The deed from W. W. Gahagan to R. M. Gahagan and B. F. Gahagan dated June 10, 1890, covering the land received by W. W. Gahagan in the division of his father's estate, stands on a different footing. It purports to convey the land to grantees who had no interest, and is good as color of title to the land it calls for. One of the boundaries named in this deed is the land then held by John Landers; and there was evidence that a poplar tree was on the line between Landers and Gahagan, and that the disputed land was on the Gahagan side of this line. There was also evidence that the Gahagans opened the mine in 1894 or 1895, and had claimed and worked it as their own since that time. It seems clear therefore that, on the issue of adverse possession under color of title for seven years, there was strong evidence to go to the jury under both the Allen bond for title and the conveyance from W. W. Gahagan to R. M. and B. F. Gahagan.

[5] The District Judge also refused to charge the jury as requested by plaintiffs that there was no evidence sufficient to warrant a finding that the defendants were protected by adverse possession without color of title for 20 years, under section 384 of the statutes. As already stated, there was evidence from which the inference might reasonably be drawn that there was a defined line recognized and observed by the Gahagans and the owners of the adjacent lands for 30 or more years as the eastern boundary of the Gahagan lands, which leaves the disputed land on the Gahagan side. The testimony of R. M. Gahagan, James M. Landers, and Wade Gahagan tended to establish this line and a known poplar as one of its marks. But careful consideration of the record leads to the conclusion that there was no evidence of the adverse possession required by the law for 20 years before the commencement of the action. It is true that B. W. Gahagan testified that the Gahagans had been in possession as far back as he could remember, but the facts upon which he based this conclusion were that at one time some of the disputed land was cultivated under the Gahagans, and that they cut timber occasionally as they needed it. There is no evidence how long the occupancy by cultivation continued, and the occasional cutting of timber could not sustain a claim of adverse possession. Shaffer v. Gaynor, 117 N. C. 15, 23 S. E. 154; Rowe v. Lumber Co., 128 N. C. 301, 38 S. E. 896.

[6, 7] But it does not follow that there must be a new trial for the refusal to charge that the jury could not find a verdict for the defendants on the claim of adverse possession for 20 years. Juries, it is true, do sometimes find verdicts without any evidence, and the entire lack of evidence proves caprice; but, in the absence of a showing of caprice, courts should attribute to jurors fair intelligence and presume that they have acted on evidence and not without it. Hence when in the pleadings two vital issues are made, and on the trial one is supported by evidence and the other not, a favorable verdict should be sustained on the presumption that the jury based its verdict on a favorable decision of the issue supported by evidence. Applying this rule, it must be inferred here that the jury reached their negative verdict on the issue, "is the plaintiff the owner of and entitled to the possession of the land in controversy," either on a finding that the true location of defendants' title embraced the land in dispute, or a finding that the

defendants had held the land in dispute adversely for 7 years with color of title, or on finding both these issues in favor of the defendants; for there was evidence justifying a finding favorable to the defendants on both. It cannot be inferred that the verdict was rested on a finding without evidence to support it that the defendants had held the land in dispute adversely for 20 years. It is true that the refusal to charge as requested indicated the absence of a clear conviction on the part of the District Judge that there was no evidence of adverse possession for 20 years; and from this the inference may be drawn that the jury, either independently or under the influence of the refusal of the trial judge to charge as requested, might not have had a clear conviction that there was no evidence in favor of the defendants on the point. Assuming this to be so, nevertheless, an appellate court should not do the technical thing of setting aside a verdict obtained after a long and expensive trial, on the possibility that the jury might have done the unreasonable thing of basing their verdict on testimony which is so shadowy that this court considers it no evidence, and which received no more consideration from the trial judge than was implied in the mere fact of submitting it to the jury. The bald technical nature of such a decision is more apparent when it is observed that the two issues of adverse possession for 20 years, and adverse possession for 7 years with color of title were independent, and that there was strong evidence supporting the defendants' side of the latter issue. For this reason, the error of refusing to charge that the defendants could not hold the land under the claim of adverse possession for 20 years cannot be allowed to result in a new trial.

The point has been expressly decided in City, etc., R. Co. v. Svedborg, 194 U. S. 201, 24 Sup. Ct. 656, 48 L. Ed. 935. In that case the trial judge refused to instruct the jury that the verdict must be for the defendant unless they found negligence on the part of a motorman, and instructed that the verdict must be for the defendant unless the jury found negligence on the part of the motorman "or conductor, or both." The court disposes of the matter in this language:

"It is contended that it was error prejudicial to the railway company to have added these words to the instruction asked, because by so doing the jury were, in effect, told that there was sufficient evidence upon which to base an inquiry whether the conductor was guilty of negligence; whereas, the company insists there was not the slightest proof showing negligence on the part of the conductor.

"We need not review the evidence as to the conductor; for if, as the defendant insists, there was no evidence whatever showing negligence upon the part of the conductor, then the modification made by the court could not have so misled the jury as to prejudice the defense."

[8] The remaining assignment of error relates to the admission of the testimony of W. W. Gahagan that John Landers, deceased, who owned the adjacent land, had pointed out a poplar as being on the Gahagan line. The claim of the defendants was that this poplar was on the line of the true location of the papers on which the defendants relied as title and color of title, and the plat introduced shows that the line of the land called for by the Allen bond for title, relied on as color of title, would run very near the poplar. Under these circumstances,

the evidence came clearly within the rule of admissibility of such evidence, thus stated in Mendenhall v. Cassells, 20 N. C. 45:

"We receive it in regard to private boundaries, but we require that it should either have something definite to which it can adhere, or that it should be supported by proof of correspondent enjoyment and acquiescence. A tree, line, or water course may be shown to have been pointed out by persons of a bygone generation as the true line, or water course, called for in an old deed or grant. A field, house, meadow, or wood may be shown to have been reputed the property of a particular man or family, and to have been claimed, enjoyed, and occupied as such."

This rule has been restated and affirmed in cases too numerous for citation. The judgment of the District Court is affirmed.

Affirmed.