TAYLOR ET AL. *v.* ALTGELT

[No. 28,187. Filed July 1, 1946.]

*Hemphling & Smith,* of South Bend, for appellants.

*Jones, Obenchain & Butler,* of South Bend, for appellee.

O'MALLEY, J.—The parties to this action entered into a written contract for the sale of 75 acres of corn in the field. Under the terms of the contract the sum of One Thousand Dollars ($1000.00) was payable on the execution thereof and the sum of One Thousand One Hundred Dollars ($1,100.00) on a definite date named in the contract. The original payment was made, but the appellants failed to make the second payment.

It is now asserted that the action of the lower court in sustaining a demurrer to the original answer constituted error. The record discloses that subsequent to this action of the court, an amended answer was filed. This waived any error that may have been made in the ruling on the demurrer. *Williams* v. *Williams, Admr.* (1940), 217 Ind. 581, 588, 29 N. E. (2d) 557, 559.

The next question involves a construction of the contract to determine whether this was a sale in gross or by unit. The sale was of the corn in the field. There is no claim that the acreage was less than 75, the number used in the contract. If there were an issue and evidence on that point the question being considered would be possible of a dif-

ferent answer. Here, however, the claim is that the intention was to sell four thousand (4000) bushels more or less. As we construe the contract, which is hereinafter set out in full, there was a definite price to be paid at definite times for the corn in the field. If the amount received was four thousand (4000) bushels or less the fixed price was Two Thousand One Hundred Dollars ($2,100.00). It was only when the amount of corn exceeded four thousand (4000) bushels that there would be a change. The complaint did not claim more than four thousand (4000) bushels were received by the appellants and the price claimed was Two Thousand One Hundred Dollars ($2,100.00). We are of the opinion that the sale was in gross and not by unit. See *Hays* v. *Hays* (1890), 126 Ind. 92, 93, 25 N. E. 600.

This contract contained covenants for the payment of money that were independent and did not rest on the delivery or receipt of any given amount of corn. Since the covenant to pay was independent, it was not necessary for the plaintiff to allege performance of the terms of the contract. The covenant to turn over the corn was not a condition precedent to the payment of the money, and it not only was unnecessary to allege performance in the complaint, but the allegation could have been stricken out on motion, and need not be proved. See *Bryan* v. *Fisher* (1833), 3 Blkf. 316; 17 C. J. S., p. 799; *Pickens* v. *Bozell* (1858), 11 Ind. 275 [Cited in *Western Wheeled Scraper Co.* v. *Scott Const. Co.* (1940), 217 Ind. 408, 418, 27 N. E. (2d) 879, 883]. In Gavit's Indiana Pleading and Practice, Vol. 1, § 109 (g), it is said that if a defense is anticipated, it may be regarded as surplusage.

Stipulations were made to the effect that demand

had been made; that payment of One Thousand Dollars ($1,000.00) was made upon the execution of the contract; that the further sum of Three Hundred Seventy Dollars ($370.00) was paid into court and accepted by the plaintiff; and that this payment and acceptance of Three Hundred Seventy Dollars ($370.00) was made without prejudice to the interests of either party.

The contract on which the action was based was introduced in evidence and is as follows:

"THIS AGREEMENT, Made by and between HERMAN E. ALTGELT, First Party, and WILLIAM C. TAYLOR and ROBERT L. TAYLOR, Partners, doing business as Taylor Brothers, Second Parties, all of St. Joseph County, Indiana;
"WITNESSETH:

"1. First party is the owner of a farm on which there has been grown a field of corn consisting of seventy-five (75) acres more or less which was grown by First Party.

"2. Second Parties desire to purchase the corn unhusked on the stalk in the field, and agree to husk said corn, leaving the fodder in the field.

"3. Second Parties agree to husk said crop promptly, to the end that said corn will not remain in the field during the winter. As said corn is husked Second Parties agree to immediately haul each load on to the scales of the St. Joseph County Farm Bureau Cooperative Association, Inc., where the same is to be weighed in order that the quantity of corn may be determined. If the quantity of corn consists of four thousand (4,000) bushels or less the Second Parties promise and agree to pay to First Party Therefor the sum of Two Thousand One Hundred ($2,100.00) Dollars. If the quantity of corn exceeds four thousand (4,000) bushels then the Second Parties promise and agree to pay to First Party the sum of Two Thousand One Hundred ($2,100.00) Dollars for the first four thousand bushels, and further agree to pay for each additional bushel the sum of Seventy (70c) Cents. Payments shall be made as follows: One Thous-

and ($1,000.00) Dollars at the time of the execution of this contract; Eleven Hundred ($1,100.00) Dollars on or before November 15th, 1943, or sooner if all of said corn shall be harvested; and Seventy (70c) Cents per bushel if the crop shall exceed four thousand (4,000) bushels as soon as the balance of the crop in excess of four thousand bushels has been harvested.

"4. It is understood and agreed that the St. Joseph County Farm Bureau Cooperative Association, Inc., is located some distance from First Party's Farm; that First Party has a barn on his farm; that if Second Parties desire they may return said husked corn and store the same in First Party's barn. If Second Parties shall store corn in said barn the same shall be removed under all conditions not later than the 28th day of February, 1944. Second Parties further agree, however, that if First Party shall rent his said farm and the tenant desires possession sooner than February 28th, 1944 they will use reasonable effort and diligence to remove said corn so that the barn may be available to said tenant. Second Parties expressly agree that if they store any of said corn, they will do so at their own risk, as First Party has no insurance on contents; and that they and their agents shall not permit smoking or doing of any other act which may cause fire.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 16 day of October, 1943.

"H. E. ALTGELT,
"First Party

"TAYLOR BROS. BY
"WM. C. TAYLOR, Partner
"Second Parties"

The balance of the evidence related to the picking of the corn by the servant of the appellants without any hindrance by the appellee. There was evidence that at the time the picking was finished at the end of

November, 1943, there remained on the ground an amount of corn that was estimated to be from one thousand one hundred (1,100) to one thousand one hundred and fifty (1,150) bushels. There was evidence that after part of the field had been picked the son of the appellee commenced to disc the part over the which the picker had been operated; that the appellants did not gather any corn on the ground whether it was disced or not; and that not more than one-third of the field was disced. If the discing interfered with the gathering, such issue was not asserted by a pleading putting it in issue. In effect, there was a complaint and an amended answer which admitted the execution of the contract but denied that it had been performed by the plaintiff.

The defendants had actually received a partial benefit and the claimed breach on the part of the plaintiff could have been compensated in damages. Under such circumstances the action can be supported without showing a strict performance. *Morton v. Kane* (1862), 18 Ind. 191, 192.

It is claimed that this contract was not sufficient under the statute of frauds. Here we have a contract that has been partly executed on both sides. The decisions of this and other courts support the proposition that neither party can question the sufficiency of the contract under the statute, when there has been execution in whole or in part.

What we have said above also disposes of the question of claimed error in refusing to permit the witness Solloway to testify as to the number of bushels taken from the field. That was a question not within the issues as drawn.

The remaining question concerns the mandatory instruction given in favor of the plaintiff below, appellee

herein. The rule seems to be that when the evidence is undisputed and only one legitimate inference can be drawn therefrom, a verdict should be directed. *Buddenberg* v. *Morgan* (1942), 110 Ind. App. 609, 628, 38 N. E. (2d) 287, 294. See *Mesel* v. *Farmers', etc., Bank* (1932), 95 Ind. App. 33, 178 N. E. 305.

In *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 40, 73 N. E. 592, 594, 74 N. E. 613, this court said:

> "Where the facts are admitted by the pleadings or otherwise, or where the evidence upon the controlling question is documentary, and its interpretation and construction a matter for the court, and but one conclusion reasonably deducible therefrom, then in such cases the court may, as a matter of law, direct a verdict in accordance with the evident facts, and in favor of the party having the affirmative of the issue."

See Elliott on Appellate Procedure, § 687, pp. 642, 643; *Fowler Utilities Co.* v. *Chaffin Coal Co.* (1909), 43 Ind. App. 438, 440, 87 N. E. 689, 690; *Moss* v. *The Witness Printing Company* (1878), 64 Ind. 125, 130; *Hazzard* v. *The Citizens State Bank* (1880), 72 Ind. 130; *Isgrig* v. *Franklin Nat. Bank* (1913), 53 Ind. App. 217, 101 N. E. 398; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. (2d) 190, 37 N. E. (2d) 5; *McIntosh* v. *Pennsylvania R. Co.* (1942), 111 Ind. App. 550, 38 N. E. (2d) 263.

In the instant case the evidence on the controlling questions was documentary. Its interpretation and construction was a matter for the court. The instruction directing a verdict was proper.

No reversible error having been shown, the judgment is affirmed.

NOTE.—Reported in 67 N. E. (2d) 531.