HEARST CORPORATION, Plaintiff-Appellant,

v.

CUNEO PRESS, INC., Defendant-Appellee,
and
Aetna Insurance Company, Defendant-Appellant.

No. 13195.

United States Court of Appeals
Seventh Circuit.

June 20, 1961.

Hugh E. Reynolds, Jr., Indianapolis, Ind., John M. Aherne, New York City, John L. Conners, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., Bigham, Englar, Jones & Houston, New York City, of counsel, for appellants.

John Paul Stevens, Chicago, Ill., John E. Fell, Kokomo, Ind., Robert Hollowell, Indianapolis, Ind., Rothschild, Hart, Stevens & Barry, Chicago, Ill., Fell, O'Mahoney, Pierce & Fell, Kokomo, Ind., Hollowell & Hamill, Indianapolis, Ind., of counsel, for appellee.

Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff, The Hearst Corporation and the defendant, Aetna Insurance Company, appeal from a judgment entered against them upon the verdict of a jury finding the issues in favor of the defendant, Cuneo Press, Inc. Hereafter, for convenience, the terms appellants, Hearst, Aetna and Cuneo are used to denote the respective parties to this appeal.

This litigation grew out of a fire on September 27, 1957, at Cuneo's printing plant, at Kokomo, Indiana. On that date, and for a number of years prior thereto, Cuneo printed the periodicals, Cosmopolitan and Good Housekeeping, for Hearst, using paper supplied by Hearst. A substantial part of that printing was done at Cuneo's plant in Kokomo, Indiana. At the time when the fire occurred Hearst paper was in storage on Cuneo's Kokomo premises of a value in excess of $820,000. The fire resulted in water damage to a substantial part of the stored paper, which the parties agree had a value of approximately $400,000.

There is no dispute as to the immediate cause of the fire. Three of Cuneo's em-

ployees were engaged in the hot-patch repair of leaks in the roofs of several buildings upon Cuneo's premises. They were using steep asphalt in molten form as a patching agent. In the repair work, one employee was stationed on the ground operating a kerosene burner with which the asphalt was heated and melted, while the other two worked on the roofs being repaired. After the asphalt was heated, it was drawn to the roof of the buildings as needed and mopped onto the spots which needed repairing.

At about 3 P.M., on September 25, a heated bucket of asphalt was drawn to the roof of a building which the roof-top employees were then using as their base of operations. Cuneo's foreman in charge of the roof repair operation proceeded to pour the heated asphalt from the hoist bucket into a second and cold bucket. As he poured the hot asphalt into the cold bucket, the asphalt flashed and spontaneously ignited, igniting the foreman's clothing. He dropped the bucket and the flaming asphalt flowed down a valley in the roof upon which the men were standing, igniting fires on the roofs of several buildings on the Cuneo premises. The heat of the fire set off the sprinkler system in warehouses in which Hearst's paper was stored causing extensive damage as hereinabove related.

Hearst filed this suit against Cuneo. In its third amended complaint, Hearst stated claims upon three theories of action for the damage which resulted to the paper. The first count of the complaint alleged eleven specifications of negligent conduct upon Cuneo's part which were alleged to have proximately resulted in the damage to the paper. The second count was based upon the *res ipsa loquitur* doctrine, upon the theory that the fire would not have occurred had Cuneo exercised ordinary care in its roof-patching operation. The third count prayed damage upon the theory that Cuneo had breached its contract for the bailment of the paper by its negligent failure to return the paper to Hearst, or apply it to Hearst's account, in as good condition as when the same had been delivered to Cuneo.

By its answer Cuneo, for its first defense, denied generally, the material allegations of negligence and breach of contract. Ultimately, the cause was submitted to the jury upon the issues thus raised and upon Cuneo's affirmative defenses of partial payment for the loss and accord and satisfaction. Other pleaded defenses were removed from the case either upon motion to strike or by peremptory instructions against Cuneo.

Shortly prior to the trial, the trial judge, *sua sponte,* ordered that Aetna be made a party defendant to the suit. Thereafter Aetna answered, admitting all allegations of the third amended complaint, and averring that any judgment recovered by Hearst in the action was subject to a constructive trust in favor of Aetna to the extent of $334,399.00 thereof.

At the close of all the evidence, the court submitted the case to the jury upon the issues as hereinabove schematized. With respect to Aetna's claim of a constructive trust, the court instructed the jury that if it found the issues for Hearst and against Cuneo, it should also render a verdict in favor of Aetna and against Hearst to the extent of $334,-399.00. The court further instructed the jury that should they render a verdict in favor of Cuneo and against Hearst, that they also should render a verdict against Aetna in favor of Hearst.

Neither of the parties requested that the jury be required to return a special verdict. Neither submitted to the court, nor requested, special interrogatories to be given to the jury. After deliberation, the jury returned its general verdict for Cuneo. This appeal followed.

■■■ Cuneo contends that the judgment must be affirmed upon the principle that a general verdict upon multiple issues must be sustained if one of such

multiple issues is amply supported by the evidence. It argues that appellants concede by failing to question the fact that the jury could have found from all the evidence that the fire did not result from actionable negligence and that it must be assumed that the general verdict rests upon that finding even though other issues were erroneously submitted to the jury.

Cuneo's basic contention is supported by Arnstein v. Porter, 2 Cir., 154 F.2d 464, 474; Betts v. Gahagan, 4 Cir., 212 F. 120, and Citizens Sav. Bank of Columbus, Ohio v. Halstead, 42 Ind.App. 79, 84 N.E. 1098, 1099, among other cases, but the contention is not applicable to the case at bar. As we observed in McCarthy v. Pennsylvania R. Co., 7 Cir., 156 F.2d 877, 882, an instruction upon an issue which is not supported by any evidence may require a reversal of a judgment based upon a general verdict if the instruction was inclined to lead the jury to attach to a part of the evidence a significance which such evidence lacked. See, generally, 53 Am.Jur., Trial, §§ 579, 580. A similar situation is presented on this appeal in which appellants principally contend that the court submitted questions of law to the jury for decision. If those contentions be sound, the general verdict may rest upon the jury's decision of a question of law erroneously submitted to it, and a reviewing court could not say that decision of the factual issues, irrespective of the weight of supporting evidence, was not affected by the error of permitting the jury to determine both the issues of fact and issues of law. Cuneo's contention is, therefore, rejected.

■ Turning then to appellants' contentions, they contend first, that the court erred in submitting to the jury as an issue of fact the question whether the bailment of the paper was gratuitous or for mutual benefit. Appellants took the position that the character of the bailment is fixed by the terms of a written printing contract, and requested the court to instruct the jury, as a matter of law, that the bailment was one for mutual benefit requiring the exercise by Cuneo of ordinary care. That request for an instruction was refused. Instead, the court instructed the jury that it would have to determine from all of the evidence whether the bailment was gratuitous or whether for mutual benefit— that if the jury found that the bailment were gratuitous, Cuneo was required to use only slight care to protect the bailed property as opposed to reasonable care if a bailment for mutual benefit were found. Obviously, that instruction goes to the very heart of the negligence issue.

Relevant to that issue, the only express provision of the basic written contract was the sentence "We (Cuneo) will accept for storage all paper up to a three months' supply for both Cosmopolitan and Good Housekeeping magazines without any additional charge." The phrase, "without any additional charge", unquestionably refers to the schedule of Cuneo's agreed charges for composition, electrotypy, etc., in production of the magazines. If the basic contract alone were determinative of the issue it appears that a construction creating a bailment for mutual benefit might be proper, treating the storage as a substantial incident to the actual printing. Hummingbird v. Schurich, 24 Cal.App.2d Supp. 757, 68 P.2d 319; Hotels Statler Co. v. Safier, 103 Ohio St. 638, 134 N.E. 460, 22 A.L.R. 1190; O'Malley, to Use of National Union Fire Ins. Co. of Pittsburgh v. Penn Athletic Club, 119 Pa.Super. 584, 181 A. 370.

In our opinion it is not necessary to determine that question since we are convinced, from our review of the whole record, that the trial court correctly determined that the basic written contract was not alone determinative of the character of the bailment relationship. The basic agreement had been modified from time to time in many respects by writings, by exchange of letters between Hearst and Cuneo and by practices employed by mutual consent which are not reflected in any of the writings. Fred Lewis, Hearst's Vice-President, testified

that the original agreement and the written modifications contained the basic agreement between Hearst and Cuneo, but that there were many practices with respect to the rather complex contractual relationship between Hearst and Cuneo relating to the printing of Hearst's magazines which were not spelled out in any of the writings. From Mr. Lewis' testimony it is seen that Hearst had access to the premises where the paper was stored and maintained some degree of control over the places and the manner of storage. Upon an occasion when the storage facilities were changed by Cuneo to buildings lacking a fire-protection sprinkler system, Hearst required Cuneo to pay, and Cuneo agreed to pay, a rebate to Hearst for its added insurance premiums resulting from the storage of the paper without sprinkler protection. Ultimately, as shown by the testimony of Cuneo employees, that matter was resolved by the installation by Cuneo of a sprinkler system in its warehouses used for the storage of Hearst's paper, with Hearst, by mutual agreement, contributing a part of the cost of construction of that fire-protection system.

Relevant to the benefits derived by the parties from the bailment relationship, Mr. Fischer, a Cuneo employee, testified that the storage of Hearst's paper on the Cuneo premises required double handling of the paper which made the printing operation more costly for Cuneo than it would have been if it had been able to receive paper supplies as needed for each current issue, which could be moved directly to the printing press room from the cars and trucks in which the paper was delivered to the plant. Mr. Lewis testified that the purpose of the storage of the paper in the Cuneo warehouses was to enable Hearst to meet its production schedules.

On cross-examination, Mr. Lewis testified that there was never any itemized charge for the storage of paper on any of Cuneo's bills to Hearst for work performed under the contract, but he stated, in answer to another question, that he would assume that a consideration for storage of the paper entered into the fixing of the schedules of payments for printing services. Thereafter, he testified that the purpose of the storage was to insure at all times that Hearst would have sufficient paper available at the printing plant to print several editions of its magazines in case the supply of paper should be interrupted by strikes or other causes beyond the control of either of the parties to the printing contract. He further testified that Hearst had to meet its publication timetable or be out of business, and that it was, therefore, essential that Hearst have immediately available a reserve supply of paper sufficient to meet its publication needs for two or three months. Although the Lewis testimony paraphrased in the last two preceding sentences was admitted by the court for impeachment only, that testimony tended to contradict the witness's gratuitous assertion that he assumed compensation for storage entered into the fixing of the price schedules for printing work.

We think it clear that the issue as to the character of the bailment was not solely a question of construction of the written contract. Principal witnesses for each of the parties testified that the basic written contract was only a part of the contractual relationship between Hearst and Cuneo at the time of the fire. The jury could infer from the testimony of Hearst's Vice-President, alone, that the basic contract did not define the whole contractual relationship with respect to paper storage. The character of the bailment was a question of fact, Cf., Union Transfer Co. v. Riss & Co., 8 Cir., 218 F.2d 553, and the court correctly instructed the jury with respect thereto.

This case is not analogous to the *locatio operis faciendi* decisions upon which appellants rely. E. g., Pan-American Petroleum Transp. Co. v. Robins Dry Dock & Repair Co., 2 Cir., 281 F. 97, certiorari denied 259 U.S. 586, 42 S.Ct. 589, 66 L.Ed. 1076; Parker Motor Co.

v. Speigal, 33 Ga.App. 795, 127 S.E. 797; Wiegert v. Davis Cleaning & Dyeing Co., 255 Ill.App. 63; Aronette Mfg. Co. v. Capitol Piece Dye Works, 6 N.Y.2d 465, 183 N.Y.S.2d 286, 160 N.E.2d 842. In each of those cases the delivery of property to the bailee was a necessary incident to the bailee's undertaking to repair or perform work thereon for a profit. Here we are not concerned with paper which Cuneo had in its possession on which it was actually working, but only with a stored reserve supply. Both the basic written contract and the acts and practices of the parties, as shown by the testimony, reveal clearly that both Hearst and Cuneo recognized a distinction in the latter's responsibility with respect to work in progress as contrasted to paper in storage.

■ Appellants' next contention relates to the issue presented by Cuneo's defense of accord and satisfaction.

The factual background is not disputed. After the receipt of the proceeds of its fire policy with Aetna, Hearst requested Cuneo to undertake to salvage the damaged paper to the end that Hearst might realize the $65,000.00 necessary to make it whole for its fire loss. Negotiations continued for some time, largely by telephone, with both parties skeptical at the outset that any substantial value might be realized from the salvage operation. Finally it was agreed that Cuneo would undertake the salvage venture and use the salvaged paper for Hearst's account. The value realized from salvage was to be allocated, first, to Hearst to the amount of $65,000, secondly, to defraying Cuneo's expenses of the salvage operation, and thirdly, to profit which Hearst and Cuneo would share equally.

Contrary to the expectations of the parties, the salvage operation resulted in a net profit of approximately $77,000 each to Hearst and Cuneo. Since all of the salvaged paper was used by Cuneo for Hearst's account, Cuneo's share of the profits and its expenses incurred in the salvage operation were remitted by Hearst to Cuneo upon periodic accountings presented as the salvage operation progressed.

During negotiations, four letters were exchanged between Hearst and Cuneo which relate to the salvage undertaking, including the bread and butter provisions for disposition of the salvage proceeds.

By its third defense, Cuneo averred that the parties intended the agreement related to salvage as an accord and satisfaction. Appellants took the position in the trial court that the four letters contained the whole agreement of the parties and that an accord and satisfaction, if any, must be found within the sixteen corners of those writings. The trial judge submitted the issue raised by that defense to the jury as a question of fact, a ruling which appellants assign as error. They now reassert their position that the four letters embody the whole agreement between Hearst and Cuneo with respect to the salvage of the paper, and contend that the issue of accord and satisfaction was wholly a question of construction of a written contract, a question of law. E. g., Aluminum Co. of America v. N. L. R. B., 7 Cir., 159 F.2d 523, 525; Taylor v. Altgelt, 224 Ind. 383, 67 N.E.2d 531.

We do not agree. Again if we look to Mr. Lewis' testimony alone, it is apparent that the agreement between Hearst and Cuneo was reached in a series of telephone conversations, and that only the profit sharing arrangement and certain knotty problems of the negotiations were further explored by letter. Pertinently, Mr. Lewis testified that he had agreed, for Hearst, that Hearst would not expect Cuneo to compensate it for the paper for which Hearst had received payment through the insurance proceeds. It seems apparent that the letters which form the monument of the agreement are semi-formal correspondence between business men and consistent with the customary practices of the parties. For example, Cuneo's Vice-President testified that the one basic printing agreement

related to printing done at plants in Philadelphia, Chicago and Kokomo, and he estimated that there were several hundred amendments, memoranda and letters, plus trade practices which were not spelled out in any of the writings, which formed the total printing agreement between Hearst and Cuneo.

Any enforceable contract, whether express or implied, may operate as an accord and satisfaction if the parties to the contract so intended. 1 Am. Jur., Accord and Satisfaction, § 19. Whenever the evidence as to the intent of the parties in entering into an agreement in which their intent is not spelled out is conflicting, the issue as to their intent is a question of fact. Maryland Cas. Co. v. Cushing, 7 Cir., 171 F.2d 257; Kellogg v. Iowa State Traveling Men's Ass'n, 239 Iowa 196, 29 N.W.2d 559, 567–568; 1 Am.Jur., Accord and Satisfaction § 178, and cases cited, notes 2, 3, & 6.

We think it is clear that the four letters do not spell out the whole agreement of the parties in the salvage undertaking. It was necessary to consider the oral testimony in conjunction with the letters to determine the intent of the parties. That was a question of fact for the jury, 1 Am.Jur., Accord and Satisfaction, § 78, and the jury can reasonably have found from all of the evidence that an accord and satisfaction of Hearst's claim for damage to its paper was intended.

Appellant's next contention grows out of the payments received by Hearst from Aetna. After the fire loss, Aetna paid to Hearst the sum of $334,339. Upon receipt of that payment, Hearst executed a document entitled "Loan Receipt" which provided that the payment was a loan for which Aetna would be reimbursed to the extent of any amounts recovered from other persons for the fire loss to "the property described below". The document contained no description of property, an omission which appellants contended resulted from a scrivener's error in preparing the receipt. That loan agreement was alleged in the third amended complaint.

Cuneo's fourth defense, that Aetna was the real party in interest, and that the statute of limitations barred any claim which Aetna might assert, was stricken by the court, upon the court's determination that the loan agreement would be recognized, subject to factual issues developed by the evidence with respect to the issue raised by Hearst's allegation of the loan and Cuneo's denial by its first defense.

During the trial, from the examination of Mr. Lewis, a question of fact emerged whether the loan receipt related to paper in storage or paper in the process of printing and production which is not involved in this litigation. The court presented to the jury that question of fact.

Standing alone, certain references to "real party in interest" in the instructions might be construed as inclined to mislead the jury. It is perhaps inevitable in protracted litigation involving multiple issues that certain sentences or instructions removed from the context of the whole record, would, if standing alone, be erroneous. Recognition of that fact has led the courts to the salutary principle that instructions be made and construed as a whole. When the instructions relating to the loan agreement are so read, we are convinced that the jury was adequately instructed with respect to that issue. Appellant's contentions as to miscellaneous errors related to instructions are rejected. The instructions as a whole submitted the case adequately and fairly to the jury. The jury has rendered its verdict upon the instructions and the evidence and that result, achieved after protracted litigation, will not be undone.

The judgment is affirmed.